Floyd J. LaCROSS

v.

George CRAIGHEAD, AWI, Inc., American Home Assurance Company and Milchem, Incorporated.

Civ. A. No. 76–3755.

United States District Court,
E. D. Louisiana.

March 6, 1979.

Edward F. Kohnke, IV, New Orleans, La., for plaintiff.

Rufus C. Harris, III, Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for Craighead and American Home.

Wood Brown, III, Montgomery, Barnett, Brown & Read, New Orleans, La., for AWI.

Antonio E. Papale, Jr., Hailey, McNamara, McNamara & Hall, Metairie, La., for Milchem.

## OPINION

SEAR, District Judge:

Plaintiff, Floyd LaCross, was employed as captain of the M/V CATHY RUTH, a vessel owned and operated by George Craighead (Craighead). The vessel was under time charter to AWI, Inc., the owner of an oil exploration rig in the Gulf of Mexico. On October 7, 1976, Captain LaCross received instructions from an AWI toolpusher to proceed with his vessel to a dock facility in Venice, Louisiana operated by Milchem, Inc., a drilling mud supplier, where Milchem personnel loaded sacks of mud onto the vessel. LaCross was to deliver the sacks to an AWI rig in the Gulf of Mexico approximately 30 miles south of Venice. During the loading operation one or more of these sacks was torn, and although plaintiff protested, the Milchem personnel refused to remove it.

After completion of the loading operation, plaintiff proceeded with the M/V CATHY RUTH to the AWI rig. Upon arrival, AWI employees based on the rig came aboard the CATHY RUTH to unload the cargo of drilling mud. Despite warnings by the plaintiff, an AWI employee lifted a torn sack over his head, causing some of the drilling mud to spill onto the vessel deck.

Thereafter, while attempting to untie a mooring line, plaintiff slipped in the mud, which had become wet and slippery, and injured his back.

LaCross sued Craighead under the Jones Act and AWI and Milchem under the General Maritime Law for his injuries. He also alleged the unseaworthiness of the M/V CATHY RUTH. All three defendants denied that an accident occurred and denied any negligence on their part. Each alleged the contributory negligence of the plaintiff. Each also filed cross-claims against the other defendants for indemnity or, in the alternative, contribution.

Trial took place on all issues before a jury on February 1 and 2, 1979. The jury was used in an advisory capacity as to plaintiff's claims against AWI. The jury returned a verdict awarding the plaintiff $85,000 in damages, apportioning liability 80% to AWI and 20% to Milchem. It absolved Craighead and the M/V CATHY RUTH from liability and the plaintiff from any contributory negligence. I now adopt the verdict of the jury and in so doing, I make the following findings of fact:

### FINDINGS OF FACT

1.

At all relevant times George Craighead owned and operated the M/V CATHY RUTH.

2.

At all relevant times the M/V CATHY RUTH was under time charter to AWI, Inc.

3.

At all relevant times Floyd LaCross was an employee of Craighead and captain of the M/V CATHY RUTH.

4.

On October 7, 1976 plaintiff received instructions from an AWI toolpusher to proceed with the M/V CATHY RUTH to the Milchem, Inc. dock facility located in Venice, Louisiana, where he took aboard a cargo of drilling mud. The loading operation was performed entirely by Milchem personnel. During the operation one or more of the sacks of drilling mud was torn, and although plaintiff protested, the Milchem personnel refused to remove it.

5.

Upon the completion of the loading operation, plaintiff proceeded with his vessel to the AWI rig located in the Gulf of Mexico approximately 30 miles south of Venice. Upon the vessel's arrival rig-based AWI employees came aboard to unload the drilling mud. Despite warnings by the plaintiff, an AWI employee lifted a torn sack over his head, causing drilling mud to spill onto the vessel deck.

6.

Shortly after the unloading was completed, plaintiff slipped in the mud while attempting to untie a mooring line and was injured.

7.

Milchem was negligent in loading one or more defective sacks onto the M/V CATHY RUTH despite the protests of plaintiff. This negligence was a proximate cause of plaintiff's injuries.

8.

AWI was negligent in unloading a defective sack so as to spill drilling mud onto the deck of the M/V CATHY RUTH and in failing to heed the warnings of plaintiff. This negligence was a proximate cause of plaintiff's injuries.

9.

Neither Craighead nor any of his employees or agents were negligent with respect to the plaintiff's accident.

10.

The M/V CATHY RUTH was not unseaworthy at the time of the accident.

11.

Plaintiff was not negligent with respect to his accident.

**12.**

As a direct result of the accident plaintiff suffered injuries to his back and incurred damages in the amount of $85,000.

Having determined the liability of AWI and Milchem to plaintiff, there remain issues raised by third-party pleadings to be resolved. These issues were tried to the bench at the same time as the issues of negligence and unseaworthiness were being tried to the jury.

The third-party complaint arose as a result of the refusal of Craighead's liability insurer, American Home Assurance Co. (American Home), to assume AWI's defense. Craighead had purchased an insurance policy from American Home for protection and indemnity on two boats, one of which was the M/V CATHY RUTH. AWI claimed that, as time charterer of that vessel, it was covered by this policy, and accordingly tendered its defense to American Home. American Home denied coverage and refused to assume the defense. It contended that the policy did not cover time charterers and that, even if it did, it did not cover this particular accident because it was not sufficiently related to the operation of the vessel. Consequently, AWI filed a third-party complaint against American Home in which it claimed indemnity for any liability it had to the plaintiff and for all attorney's fees expended in the defense of the suit.

In support of its claim that AWI as time charterer was not covered, American Home relies on that part of the policy marked "Endorsement # 1," which provides coverage of additional parties in certain specified circumstances. The top half of the endorsement is a printed form. It provides in part:

"[T]he companies listed below are named as additional assureds subject to policy terms and conditions . . .

"If any of the below mentioned additional assureds have any other relationship or interest to the insured vessel(s) *other than as owner or charterer*, nothing herein contained shall be construed to extend the coverage afforded by this policy of insurance to liabilities incurred in any capacity *other than as owner or charterer*." (Emphasis added)

Only one acting as an "owner or charterer" of one of the covered vessels is covered under this portion of the endorsement. American Home argues that AWI was not acting as either owner, charterer, or owner *pro hac vice* of the M/V CATHY RUTH and that it is therefore not entitled to recover under the policy.

American Home bases this argument on my decision in *Offshore Logistics Service, Inc. v. Mutual Marine Office, Inc.*, 462 F.Supp. 485 (E.D.La.1978). In that case a vessel passenger was injured due to the combined negligence of Offshore and Southern Gas Co. Offshore and Southern arranged for a cash settlement with the injured man. At the time of the accident Offshore was covered by both primary and excess liability insurance. The primary insurance covered, in particular:

" ' . . . all such loss and/or damage and/or expense as the Assured shall as *owners of the vessel* named herein have become liable to pay and shall pay on account of . . .

(1) Liability for loss of life of, or personal injury to, or illness of, any person . . . ' "

*Id.* at 489 (emphasis added). The excess policy incorporated the above language by reference, and both policies named Southern as an additional assured. The primary insurer paid for the settlement to the extent of its policy coverage, but the excess insurer refused to pay. As to Southern, it claimed that the policy did not apply because Southern was not an owner *pro hac vice* of the vessel. I agreed that the policy, by its express language, covered Southern only as owner *pro hac vice* (though I disagreed with the excess insurer as to whether Southern had attained that status).

AWI contends that *Offshore* is not applicable to this contract because of additional coverage provisions which are typed in on the second half of "Endorsement # 1." I

agree. The relevant portions of the typed provision state:

"*Notwithstanding anything contained herein to the contrary,* and in consideration of the premium charged, it is agreed by the underwriters hereunder that *permission is granted to charter the vessels insured herein to AWI, Inc. and during the term of such charter AWI, Inc.* and it's (sic) contractors for whom the vessels are working *shall be named as additional assureds hereunder.* It is further agreed that all rights of subrogation are waived during such time as these vessels are working for AWI, Inc. and it's (sic) contractors." (Emphasis supplied.)

It should be noted that these provisions make AWI an additional assured during the *term* of a charter of the vessel without regard to any requirement that AWI be acting as "owner or charterer" at the time the liability is incurred. Since this bottom portion of "Endorsement # 1" is typed, it prevails over the printed portion in the interpretation of the contract. *Bluewaters, Inc. v. Boag,* 320 F.2d 833, 835 (1st Cir. 1963); *Argonaut Insurance Co. v. National Indemnity Co.,* 435 F.2d 718, 719–20 (10th Cir. 1971). Furthermore, the typed section begins with the words, "Notwithstanding anything contained herein to the contrary," which would indicate that provision of the contract prevails over anything inconsistent with it. It grants permission for AWI to charter the insured boats and extends coverage to AWI and AWI's contractors during the term of any such charter. This language specifically covers AWI for liability as a charterer, and therefore, the language in the printed portion of Endorsement # 1 concerning status as an "owner or charterer" does not apply to AWI.

In light of this, American Home's reliance on *Offshore* is misplaced. In *Offshore* the policy at issue specifically covered only parties acting as owners of the vessel. This policy, by its very language, covers AWI as a charterer. *Offshore* and my decision here are completely consistent. Each depends on

the specific language of the policy in question. I conclude that Craighead's protection and indemnity policy covered AWI as an additional assured in its capacity as time charterer of the M/V CATHY RUTH.

The fact that AWI is covered by the policy does not, however, dispose of its third-party claim. It must still demonstrate that the policy covers this particular accident. The protection and indemnity clauses of the policy state in part:

"In consideration of the premium and subject to the warranties, terms and conditions herein mentioned, this Company hereby undertakes to pay up to the amount hereby insured and in conformity with lines 5 and 6 hereof, such sums as the assured, as owner of the _____ shall have become legally liable to pay and shall have paid on account of:

Loss of life of, or injury to, or illness of, any person;

Hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life or injury to or illness of any member of the crew of the vessel named herein . . ."[1]

It is clear from the context that the blank space should have been filled with the names of the covered vessels, one of which is the M/V CATHY RUTH. Thus, Craighead is covered only for accidents for which he is liable "as owner of" the vessel. As an additional assured, AWI is afforded precisely the same scope of coverage.

In *Lanasse v. Travelers Insurance Co.,* 450 F.2d 580 (5th Cir. 1971), the Fifth Circuit construed an identical provision (identical save, of course, for the vessels covered). 450 F.2d at 583, n. 7. That case sets out the controlling legal standard on the scope of policy coverage and also presents a particularly relevant fact situation. In *Lanasse* a crew member on a vessel which was on time charter to Chevron Oil Company was injured. That vessel was transporting a welding machine from the west to the east side of a Chevron oil platform. As the

1. Lines 5 and 6 state "Loss, if any, payable to ASSURED OR ORDER."

rig-based crane operator attempted to raise the welding machine from the vessel back onto the rig, he suddenly stopped lifting. The machine then swung laterally and pinned the seaman against the pallets, injuring him seriously. The district court ruled in an uncontested finding that Chevron's crane operator was negligent and that his negligence was the sole proximate cause of the accident. The Fifth Circuit then had to consider whether Chevron was covered as an additional assured for this accident under the vessel's protection and indemnity policy. The insurer argued strenuously that the injury was due to Chevron's status as rig owner and not to its status as vessel owner. The Fifth Circuit agreed:

"The Trial Judge was . . . right in holding that the P & I policy did not cover this claim because Chevron as an additional assured . . . did not become liable 'as owner of' the vessel. The fact findings—which no one can, or does, challenge—are specific. The vessel and her crew were, on the one hand, absolved from all wrong or unseaworthiness. Chevron, on the other hand, was found at fault for the manner in which the crane was operated. The vessel offered nothing further than a condition or locale for the accident.

"There must be at least some causal operational relation between the vessel and the resulting injury. . . . [W]here injury is done through nonvessel operations, the vessel must be more than the inert locale of the injury. Nothing more occurred here, for it was Chevron's actions as a platform operator or as a crane operator that caused the harm, and that does not make it a liability of a shipowner." 450 F.2d at 584.

One other Fifth Circuit case and two district court cases have subsequently applied the Lanasse standard to similar policies. In Wedlock v. Gulf Mississippi Marine Corp., 554 F.2d 240 (5th Cir. 1977), the plaintiff was injured due to the combined negligence of a tug and a barge which it was towing. The Fifth Circuit held that the insurance which covered the tug for its liability did not cover any damages for which the barge was responsible. In Dow Chemical Co. v. Tug "THOMAS ALLEN", 349 F.Supp. 1354 (E.D.La.1972), cited with approval in Wedlock, the district court faced a similar situation. The court held that a policy which covered liability "in respect of" a tug did not cover liability arising from the negligence of a barge which the tug was towing.

Finally, there is the most recent case of Offshore, supra, in which Southern Gas Co. was negligent in dispatching the covered vessel into rough seas. The insurer argued that Southern's negligence was not vessel related. I applied the Lanasse-Wedlock standard and found otherwise. I distinguished both of those cases:

"In Lanasse the injury was precipitated through negligent operation of a platform-based crane. In Wedlock the relevant negligence (open hatch cover on barge) occurred entirely on board the barge, not the vessel. In the present case, however, the negligence of Southern was definitely vessel related—the vessel itself was the instrument of the accident. The fact that the decision to dispatch the crew boat was made on fixed ground hardly detracts from the maritime vessel-centered character of the negligence. It was no fortuity that the accident occurred aboard the vessel, for the very risk incurred by Southern in its decision to send the boat into the Gulf was that the stormy weather conditions would cause an injury aboard the vessel." Offshore at 490.

In sum, I must now decide whether AWI's liability is due to its negligence as platform operator or as vessel charterer. As to the former, it is not covered. Lanasse and the succeeding cases set forth the legal standard to be applied here, that of the "causal operational relation between the vessel and the resulting injury." Lanasse, supra, 450 F.2d at 584. I find that this case

is indistinguishable from *Lanasse,* and I therefore hold that the policy issued by American Home to Craighead does not cover AWI for its liability to LaCross. In both cases time charterers claimed coverage for liability under protection and indemnity policies whose relevant provisions are virtually identical. Both cases involve accidents which occurred due to the negligent conduct of rig-based employees while unloading cargo from vessel to rig. In each case the vessel and crew were absolved from all negligence or unseaworthiness. As in *Lanasse,* the danger created by the rig-based employees could as easily have been created on the platform itself (and probably was, though without a resultant accident). The vessel was simply the locale for the accident, and this is not enough to trigger coverage under the "causal operational relation" standard. Accordingly,

Let judgment be entered in the third-party claim in favor of American Home Assurance Co. and against AWI, Inc. dismissing the claim with prejudice.