Edmond HELAIRE

v.

MOBIL OIL CORPORATION et al.

Civ. A. No. 78–0123.

United States District Court,
W. D. Louisiana,
Lafayette–Opelousas Division.

Oct. 7, 1980.

Domengeaux & Wright, Anthony D. Moroux, Lafayette, La., for plaintiff.

Henderson, Hanemann & Morris, Charles Hanemann, Houma, La., for Mobil Oil Corp.

Porteous, Toledano, Hainkel & Johnson, William W. Miles, and Edward J. Brandao, New Orleans, La., for Cheramie Boat Trucks & Cheramie Brothers Boat Co.

Weigand & Siegrist, Joseph J. Weigand, Jr., and Joseph Kopfler, Houma, La., for Teledyne and Argonaut.

## MEMORANDUM OPINION

PUTNAM, Senior District Judge.

Plaintiff, an employee of Teledyne Movible Offshore Company (Teledyne), was injured on February 12, 1977, while unloading casing from the M/V Bo–Truc No. 25, owned by Cheramie Brothers Boat Company (Cheramie) and under time charter to Mobil Oil Corporation (Mobil). This suit against Mobil and Cheramie and their respective insurers followed.

The case was tried to a jury and a verdict returned in favor of plaintiff and against Mobil in the sum of One Hundred Thirty–five Thousand & No/100 ($135,000.00) dollars, based upon its negligence. Cheramie was found free of fault. The sole question remaining to be decided arises from Mobil's claim for indemnity against Cheramie, and from its insurers, Highlands Insurance Company, American General Fire & Casualty Company, Citadel Insurance Company, and Underwriters at Lloyd's and Insurance Companies in London (hereinafter referred to as the Insurers), under a policy of protection and indemnity insurance in which Mobil is named as an additional insured. This claim was reserved to the court.

Plaintiff's suit against Mobil is two–pronged, first as owner of the platform under Article 2315 of the Revised Civil Code of Louisiana of 1870, L.S.A.–C.C. Art. 2315, adopted as federal law by the Outer Continental Shelf Lands Act, Title 43 U.S.C.A. § 1333 (a)(1), (2)(A), *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), and secondly as "charterer" of the M/V Bo–Truc No. 25, under the Longshoremen's and Harbor Workers' Compensation Act, Title 33 U.S. C.A. § 901 et seq., §§ 902(21)[1] and 905(b).[2]

---

1. Title 33 U.S.C.A. § 902(21)

"The term 'vessel' means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member."

2. Title 33 U.S.C.A. § 905(b)

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this

The evidence established that Teledyne contracted to drill a well in search of oil and gas for Mobil according to the terms of a drilling contract which is in evidence as exhibit Mobil # 3. Mobil, as owner of the platform, had a company representative on the job at all times during the progress of the work, with general authority to see that the work was carried on according to the terms of the contract and to otherwise represent the interest of his employer.

Under the agreement, Mobil had the sole responsibility for the procurement, transportation, loading and unloading of casing to be used in the well, and was required to furnish the necessary vessel for moving casing and other supplies from the mainland to the platform. The M/V Bo–Truc No. 25 was chartered for this purpose, and worked under the direction of Mobil's representative on the structure, and his land–based superiors. Plaintiff worked for Teledyne as a roustabout, or general laborer, under the direct orders of its crane operator as part of the crew furnished by Teledyne under its agreement with Mobil. Teledyne was bound to furnish labor for unloading Mobil's casing.[3]

When the Bo–Truc No. 25 arrived at the platform, it was ordered to tie up for unloading. Teledyne's crane operator called a crew of roustabouts to unload the casing and they attempted to do so shortly after midnight on February 12. These efforts were aborted because of the weather; it was raining and windy, with seas running from 5–8 feet. Visibility was poor. The roustabouts returned to the platform, and the crane operator was apprised of conditions on the vessel. In order to unload the casing, plaintiff and his co–workers had to stand and walk on the wet pipe, with the vessel pitching in the seas.

At approximately six o'clock a.m., according to plaintiff and his fellow workers, they were sent down to attempt unloading again; conditions had improved to the extent that day was breaking, but intermittent rain and choppy seas continued to prevail. It is significant that none of the other parties who were privy to this operation and in positions of authority, such as the captain of the vessel, Mr. Smith, the company representative, Mr. Magnia, or the crane operator, Mr. Gallet, had any independent recollection of the operations in question, but all raised a single voice that had conditions been as bad as plaintiff described them they would never have undertaken to unload the cargo at that time. Captain Smith testified that he had no recollection of ever tying up alongside the platform to unload, as plaintiff testified he did, but that it was customary to tie up stern to at this structure. He was positive, however, in his assertion that the Cheramie boat worked for Mobil and he took his orders from Mobil, although he could not say who on the platform had directed him to come in to unload on the night in question, whether it was Mr. Magnia or Mr. Soprano, the Teledyne toolpusher on the drilling rig.

While attempting to carry out his instructions, plaintiff fell due to the slippery, wet condition of the casing, and injured his knee.

That the finding of the jury was predicated upon Mobil's actions in directing the unloading of its cargo from the vessel over which it exercised control as charterer is clear. Under the instruction given them by the court this would seem to be the only logical conclusion that can be drawn from the verdict. The Court declined to charge the jury on "platform negligence" under Article 2315, supra, but did charge them that under the terms of the contract with

section shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

**3.** Mobil Exhibit 3, and its attachment, Exhibit A, spells out the areas of responsibility between the contracting parties. Among the Movible crew, Exhibit A, P. 1–11, are four general maintenance men (roustabouts) under the

crane operator who was Maintenance Foreman. Exhibit A. p. 2, Items 3.17, 3.46, 3.47, 3.48, 3.49 and 3.50 pinpoint Mobil's responsibilities with regard to casing, its transportation, and loading and unloading at docksite or boat landing, all of which were to be arranged and paid for by Mobil.

Teledyne, Mobil was responsible for unloading the casing and as charterer of the vessel fell within the definition of "vessel" as set out in Section 902(21) of LHWCA, supra, so that its negligent breach of the duties imposed on a vessel owner to longshoremen aboard its vessel, would visit liability upon it for injuries caused thereby. *Gay v. Ocean Transport and Trading, Ltd.*, 546 F.2d 1233 (5 Cir. 1977); *Brown v. Mitsubishi Shintaku Ginko*, 550 F.2d 331 (5 Cir. 1977).

We now expressly find from a preponderance of the evidence in the case that Mobil was so acting on the night in question and that control of the operation was, in fact, vested in the company representative on the platform, Mr. Magnia, any provisions in the contract with Teledyne to the contrary notwithstanding. We also find that Mobil breached its obligation as owner of the vessel under Restatement, Second, Torts §§ 343 and 343A. That the danger from rain, wet pipe, rough seas and the weather conditions at the time in question was open and obvious does not, in our opinion, relieve Mobil of liability. Plaintiff had no alternative but to follow his orders and attempt to do the work, other than to walk off the job. His objections were overridden by Mr. Magnia through the crane operator.

Mobil concedes in brief that its claim for indemnity against Cheramie under the charter and operating agreements must fall, as well as its claim based upon *Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178 (5 Cir. 1969), because of the jury's finding that Mobil's negligence was the sole cause of the accident. We agree fully with this position in view of our own evaluation of the evidence above set forth.

More serious, however, is Mobil's claim against Cheramie's Insurers under the protection and indemnity policy covering the Bo–Truc No. 25, in which Mobil is named as an additional insured. The insuring agreements of the policy are as follows:

"The Assurer hereby undertakes to make good to the Assured ... all such loss and/or damage and/or expense as the Assured shall have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:

(1) Liability for ... personal injury to ... any person ...

(14) Costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to conditions and limitations hereinafter provided ... "

We take particular notice of the deletion of the clause "as owners of the vessel named herein", from the language of the policy.

The defendant Insurers rely upon *Lanasse v. Travelers Ins. Co.*, 450 F.2d 580 (5 Cir. 1971), cert. den. sub. nom. *Chevron Oil Co. v. Royal Ins. Co.*, 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972); *LaCross v. Craighead*, 466 F.Supp. 880 (E.D.La.1979), and *Dow Chemical Co. v. Tug Thomas Allen*, 349 F.Supp. 1354 (E.D.La.1972), and other cases, which hold that where the charterer's negligence is the result of action taken by it in its capacity as owner of the platform, there is no coverage under the terms of the vessel's protection and indemnity policy which ordinarily insures the charterer against liability "as owner of" the vessel, since there must be some causal operational relation between the vessel and the resulting injury. In *Lanasse*, supra, the negligence complained of was that of the crane operator on the platform in lifting a heavy object from the deck of the vessel and allowed it to swing, injuring plaintiff. In *LaCross*, supra, the same situation prevailed; in fact, the learned trial judge there found the case to be identical to *Lanasse* in all respects.

These cases are distinguishable from the present case and do not apply. First, in the conduct of the operation Mobil in fact exercised control over the vessel on this occasion and the unloading of its casing from the Bo–Truc No. 25. The work being done was

traditionally and historically vessel–related; in fact, but for the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901 et seq., plaintiff would be entitled to coverage under the Jones Act, 46 U.S.C.A. § 688. *International Stevedoring Co. v. Haverty*, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926).

Secondly, the charter agreement required Cheramie to furnish insurance to Mobil with endorsements removing the "other than owner" limitation clauses. This was done by deleting the restrictive wording from the insuring agreement quoted hereinabove. The deletions remove from this policy the restrictive coverages "as owner of the vessel" which were controlling in *Lanasse v. Travelers Insurance Company*, supra.

The deletions must be construed in accordance with the obvious intent of the parties. See: 17 Couch on Insurance 2d Ed., Part XIV § 65:1 et seq. This being so, the policy covered Mobil while acting as charterer under § 902(21), *or* while acting as platform owner causing injury to a person performing longshoring duties offloading casing for its well onto the platform.

Finally, defendant Insurers point to *Roberts v. Andrew Martin Sea Services, Inc., et al.*, No. 78–2219, United States Court of Appeals for the Fifth Circuit, decided May 30, 1980, not yet reported, for the proposition that there was no vessel negligence in this case within the meaning of § 905(b). In *Roberts*, however, the plaintiff's employer, Pool Offshore, exercised control over and directed the performance of the work and could have ordered the operation to cease at any time. This is not the case here–we reiterate that the evidence preponderates to the effect that Mr. Magnia, Mobil's representative, made the decision to proceed with the work despite the inclement weather, and he had ultimate control over this phase of the work.

Judgment is accordingly entered in this case rejecting the claims for indemnification by Mobil against the defendant Cheramie, but allowing such claims in favor of Mobil and against the defendant Insurers, as above set forth.

The attorneys for Mobil have heretofore filed a suggested form of decree. In the absence of written objections thereto, this decree will be signed and ordered entered by the Court on the tenth day following the filing of this decree. Upon signing of the decree, the Clerk shall cause entry of judgment to be made.