709 F.2d 1031
 1984 A.M.C. 820
 Edmond HELAIRE, Plaintiff-Appellee Cross-Appellant,
v.
MOBIL OIL COMPANY, Defendant-Appellant Cross-Appellee,
CHERAMIE BOAT TRUCKS, et al., Defendants-Third Party
Plaintiffs-Appellees,
v.
TELEDYNE MOVABLE OFFSHORE, INC., Third Party Defendant-Appellee,
v.
HIGHLANDS INSURANCE CO., et al., Third Party Defendants-Appellants.
 No. 80-3888.
 United States Court of Appeals,
Fifth Circuit.
 July 22, 1983.
 
 Charles Hanemann, Houma, La., for Mobil Oil Co.
 James R. Carter, William A. Porteous, III, New Orleans, La., for Highlands, American, St. Paul, Citadel & Underwriters.
 Anthony D. Moroux, Lafayette, La., for Helaire.
 Joseph J. Weigand, Jr., Houma, La., for Teledyne and Argonaut Ins.
 Appeals from the United States District Court for the Western District of Louisiana.
 Before WILLIAMS and JOLLY, Circuit Judges, and WILL(fn*), District Judge.
 JERRE S. WILLIAMS, Circuit Judge.
 
 
 1
 This appeal arises from injuries sustained by Edmond Helaire, a roustabout employed by Teledyne Movable Offshore, Inc., while unloading casing onto a fixed platform owned by Mobil Oil Corporation from an offshore supply vessel owned by Cheramie Brothers Boat Company, Inc., and chartered by Mobil. Helaire brought suit in district court against Mobil and Cheramie as vessel owners, pursuant to 33 U.S.C. Sec. 905(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Secs. 901 et seq., and upon a state law negligence claim pursuant to La.Civ.Code art. 2315. The district court, 497 F.Supp. 633, granted Mobil's motion for directed verdict on the state claim and submitted to the jury only those claims against Mobil under the LSHWCA.
 
 
 2
 In a jury trial, Cheramie was exonerated, and Mobil was found 100% liable for Helaire's injuries.[1] The court additionally entered judgment for Cheramie on Mobil's claim for indemnity, but granted Mobil recovery over from Cheramie's underwriters[2] pursuant to a policy of protection and indemnity insurance in which Mobil had been named as an additional insured. All the parties appeal. Mobil argues that the trial court's jury instructions were improper and prejudicial; the underwriters claim that the court erred in dismissing the state law negligence claim, and Helaire contends that the court's failure to award prejudgment interest was an abuse of discretion.
 
 
 3
 We affirm the judgment of the district court with respect to the exoneration of Cheramie Brothers, the dismissal of the state law negligence claim, and the indemnification order. However, we find that the court's instructions incorrectly stated the standard of owner liability under Sec. 905(b) and that this error was potentially prejudicial to Mobil. Accordingly, we reverse the judgment on the issue of Mobil's liability and remand for a new trial.
 
 Facts
 
 4
 Edmond E. Helaire was employed as a roustabout, or general laborer, by Teledyne Movable Offshore, Inc. upon a Mobil Oil Corporation fixed platform located in the Gulf of Mexico off the coast of Texas. Teledyne, an independent contractor, had been hired by Mobil to drill a well in furtherance of Mobil's search for oil and gas on the Continental Shelf. Through a charter agreement, Mobil had arranged with Cheramie Brothers to provide an offshore supply vessel for the transportation of material between land and the platform. While Mobil was responsible for the procurement and transportation of casing to be used in the well, work done on the platform was carried out by Teledyne, whose employees were responsible for the handling of all material, including loading and unloading the boats. Helaire worked under the direct supervision of the Teledyne crane operator and toolpusher as part of the crew furnished by Teledyne under its agreement with Mobil. Mobil, as owner of the platform, provided on-sight supervision through its drilling supervisor, or "company man."
 
 
 5
 On the night of February 11, 1977, the M/V Bo-Truc No. 25 arrived with a load of casing to be delivered on the platform. Seas were rough and it was raining. The vessel was tied up on a mooring under the platform's crane. A crew of roustabouts was then called to unload the casing,[3] but these attempts were ultimately abandoned because of the high seas and poor visibility. At 6 o'clock the following morning, Helaire and a co-worker were lowered to the deck of the supply vessel, still moored in the same place, again to attempt the unloading. Generally, the unloading required that the roustabouts place hooks in both ends of each joint of casing so that the crane operator could then lift the joints onto the platform for stacking and later use. In order to attach these hooks, it was necessary for the men to move from one end of the casing to the other on the surface of the casing, which was only twelve to thirteen inches wide. Helaire testified that he complained to his supervisor, the Teledyne crane operator, about the difficulty in accomplishing the unloading because the casings were wet and the vessel was pitching in the heavy seas. He asked that the unloading be suspended until conditions improved, but he was ordered to continue work. While carrying the hooks forward to place them in the ends of the joints, Helaire lost his balance on the slippery casing and fell, injuring his knee. His suit against Mobil and Cheramie and this appeal followed.
 
 I. Jury Instructions
 
 6
 The underwriters and Mobil argue on cross appeal that the trial court's instructions, based on Secs. 343 and 343(A) of the Restatement (Second) of Torts constituted reversible error. Specifically, they argue that the United States Supreme Court case of Scindia Steam Navigations Co. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), decided subsequent to the jury's verdict in this case, altered the duty of vessel owners to longshoremen and their employees during unloading operations. Under Scindia, they assert that a finding of liability is predicated only in those cases where the owner has actual knowledge of an open and obvious danger as well as actual knowledge that the stevedore is doing nothing to correct the danger.[4] Because the trial court's instructions included liability in cases where Mobil, by the exercise of reasonable care, should have anticipated the harm of the obvious and open danger, the owner was subjected to a stricter standard than that established by Scindia as the applicable interpretation of the law.
 
 
 7
 The question before us, therefore, is whether liability of a vessel owner with respect to open and obvious dangers once stevedoring operations have begun is less extensive under Sec. 905(b) of the LSHWCA than under the traditional tort rules. If the situations under which an owner can be found liable for injuries to a third party are restricted under the interpretation of Sec. 905(b) announced in Scindia, we must reverse and remand. If not, any error resulting from the erroneous instructions was harmless. Fed.R.Civ.P. 61.
 
 A. Background
 
 8
 Prior to 1972, a longshoreman injured in the course of his employment had several bases upon which he could recover for his injuries. First, he could receive compensation payments from his employer, regardless of the fault of his employer, the stevedore. In addition, the longshoreman could bring an action against the owner of the vessel and could recover if he could prove that he had been injured either because the owner was negligent or because the ship was unseaworthy. No showing of fault on the part of the owner was necessary to support the unseaworthiness claim. Even if the unsafe condition had been created by the stevedore, the shipowner was liable for the longshoreman's injuries. See generally Scindia Steam Navigations Company v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981); Pluyer v. Mitsui O.S.K. Lines, Ltd., 664 F.2d 1243, 1246 (5th Cir.1982); Lemon v. Bank Lines, Ltd., 656 F.2d 110, 113 (5th Cir.1981). In 1972, Congress amended the Longshoremen's and Harborworkers' Compensation Act, and substituted negligence for unseaworthiness as a standard of liability of the shipowner and abolished the shipowner's right of indemnity against the stevedore. See 33 U.S.C. Sec. 905(b). Since the 1972 amendments, liability is imposed upon the owner only for the failure of the vessel or its owner to exercise reasonable care.[5]
 
 
 9
 Although it was clear that the amendments imposed a negligence standard in place of a standard of liability without fault, the specifics of that standard were left to be "resolved through the application of accepted principles of tort law and the ordinary process of litigation". S.Rep. No. 92-1125, 92d Cong., 2d Sess. 11 (1972); H.R.Rep. No. 92-1441, 92d Cong., 2d Sess. 7 (1972), U.S.Code Cong. & Admin.News 1972, p. 4698. Pursuant to this legislative charge, the process of defining the precise contours of shipowner liability under Sec. 905(b) has been a matter of serious concern to the courts. Not unexpectedly, the circuits disagreed as to the standards to be applied, particularly in cases where the stevedore, the employer of the injured longshoreman, had also been negligent. This Court, along with the Second and Fourth Circuits, adopted the approach of the Restatement (Second) of Torts (1965), Secs. 343 and 343A.[6] See Gay v. Ocean Transport and Trading, Ltd., 546 F.2d 1233, 1238 (5th Cir.1977). With respect to conditions which are open and obvious to the stevedore in control of the operations, the vessel owner would not be absolved of responsibility if the owner "should anticipate the harm despite such ... obviousness [of the defect]" and still failed to correct it. Mallard v. Aluminum Co. of Canada, Ltd., 634 F.2d 236, 243 (5th Cir.), cert. denied, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). The First and Third Circuits rejected the Restatement approach, holding that the owner could be negligent only if it were participating in the activity and the stevedore were not in exclusive control of the work area.[7]
 
 
 10
 B. The Scindia decision.
 
 
 11
 In Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the Supreme Court undertook to resolve the conflicting decisions of the circuits. There, a longshoreman was injured by sacks of wheat which fell from a pallet suspended by a defective ship's winch. The winch had been malfunctioning for two days prior to the accident, but the stevedore continued to use it. Because there was a triable issue of fact as to whether the owner had "actual knowledge" of the failure of the winch mechanism, the Supreme Court reversed the lower court's granting of a summary judgment for the owner and remanded for a determination of whether the owner had a duty to intervene and stop the unloading process.
 
 
 12
 While the opinion itself does not address every issue of vessel owner liability under Sec. 905(b),[8] several principles do emerge. The most basic of these is that the primary responsibility for the safety of the longshoremen rests upon the stevedore: "As a general matter, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards. The ship is not the common employer of the longshoremen and owes no such statutory duty to them." 101 S.Ct. at 1623. The opinion relieved the owner of an automatic duty to inspect or supervise stevedoring operations. Once the stevedore's cargo operations have begun, absent contract provision, positive law, or custom to the contrary, the owner has no general duty by way of supervision or inspection to discover dangerous conditions that develop in the area assigned to the stevedore. The Court explained that the owner is not liable to the longshoremen for injuries caused by dangers "about which he had no duty to inform himself," but rather "is entitled to rely on the stevedores, and owes no duty to the longshoremen to inspect or supervise the cargo operations." Id. 101 S.Ct. at 1624.
 
 
 13
 Despite these broad areas of immunity, however, there are circumstances where the owner cannot escape liability by reliance upon the stevedore. First, before turning over the ship to the stevedore, the owner has a duty to warn the longshoremen of hidden defects that would be known to the shipowner in the exercise of reasonable care. He must also exercise care to deliver to the stevedore a safe ship with respect to gear, equipment, tools, and work space. Second, the owner has a duty to avoid exposing the longshoremen to harm "from hazards under the act or control of the vessel." Third, even though the owner is generally relieved of responsibility for accidents which occur once the unloading process has begun, "if [the stevedore's] judgment ... was so obviously improvident that [the owner], if it knew of the defect and that [the stevedore] was continuing to use it, should have realized the [defect] presented an unreasonable risk of harm to the longshoremen, ... in such circumstances [the owner] had a duty to intervene" and eliminate or neutralize the hazard. Id. 101 S.Ct. at 1626.
 
 
 14
 The impact of the Supreme Court's decision in Scindia upon the extent of a vessel's duty to longshoremen under 33 U.S.C. Sec. 905(b) as previously applied in this Circuit under the Restatement standard remains less than clear. The majority of the Court in Scindia specifically stated that it was "unprepared to agree that the shipowner has precisely the duty described by the Court of Appeals for the Second Circuit [drawn from the Restatement (Second) of Torts]," 101 S.Ct. at 1626, while Justice Powell stated in his concurrence that he did not consider the Restatement standard "to be inconsistent" with the majority's opinion. Id. 101 S.Ct. at 1628 n. 1. This Court has considered cases subsequent to Scindia which involve the relationship between jury instructions in Sec. 905(b) actions based on Scindia and those based on Sec. 343(A) of the Restatement. These cases provide general guidance but are not controlling. Each revolved around factual situations where there was no knowledge. Clearly, under these cases Scindia denied liability.
 
 
 15
 In Hill v. Texaco, Inc., 674 F.2d 447 (5th Cir.1982), we found that a vessel owner was not liable to the employee of an independent contractor for injuries sustained from a fall while the employee was inspecting a ship's oil tank even though the district court had applied land-based negligence standards to the ship. The owner had no knowledge that the contractor was permitting the employee to climb the tank without safety equipment. We found that in the absence of knowledge, Texaco was not negligent in failing to act. As Scindia said, owner liability for injuries which occur during the unloading process would result only "[i]f the shipowner becomes aware during the stevedore's work that the ship or its gear poses a danger to the longshoremen, and if the shipowner also learns that the stevedore is acting unreasonably in failing to protect the longshoreman against the danger." Id. at 451. (Original emphasis).
 
 
 16
 In Duplantis v. Zigler Shipyards, Inc., 692 F.2d 372 (5th Cir.1982), we reiterated the interpretation of Scindia we first articulated in Hill. We found no duty on the part of the owner to intervene because "[t]here is no evidence that [the owner] ever became aware of any defects developing during [the contractor's] repair operation." Id. at 376. In Moser v. Texas Trailer Corp., 694 F.2d 96 (5th Cir.1982), we affirmed a decision of the district court that a shipowner breached no duty to the employee of the independent contractor because his injury was caused "by a transitory condition of which it had no knowledge". We explained that "[s]ince Scindia, at all events, it is clear that this liability [under Sec. 905(b) ] is no more than, if as, extensive as that subsisting under 'the general law of torts.' " Id. at 98. (emphasis added).
 
 
 17
 Thus, we must decide today the question left open by our decisions in Hill, Duplantis, and Moser: Once unloading operations have begun, is the vessel's duty under Sec. 905(b) LSHWCA less extensive than under traditional tort rules?
 
 C. Owner Liability under LSHWCA
 
 18
 Helaire's cause of action against Mobil is based upon his assertion that he was ordered by his stevedore employer to continue unloading operations in spite of high seas, poor visibility and rain, and that this inclement weather created a dangerous condition on deck. The casing Helaire had to traverse in order to unload it onto the platform was slippery from the rain and unsteady from the rocking of the boat in heavy seas. Although the hazardous condition was readily apparent and brought to the attention of his employer's supervisor, the unloading continued and his injury resulted.[9]
 
 
 19
 The district court instructed the jury that Helaire was considered an invitee aboard the vessel and that
 
 
 20
 [a] vessel owner is subject to liability for physical harm caused by a condition of a vessel or its equipment, if, and only if, he knows or, by the exercise of reasonable care, would discover the condition and should realize that it involves an unreasonable risk of harm and should expect that invitees--that is, the longshoremen--would not discover or realize the danger or will fail to protect themselves against it and the vessel owner fails to exercise reasonable care to protect them against danger.
 
 
 21
 This is virtually a verbatim recitation of Sec. 343 of the Restatement (Second) of Torts. See supra note 6, at 7. The court went on to explain that
 
 
 22
 [t]he general rule is that the vessel owner is under no obligation to protect the invitee against dangers which are obvious and apparent. This is not a fixed rule, and all of the circumstances must be taken into account. And, where the vessel owner, in this case, Mobil or Cheramie--through its people aboard the Bo-Truc 25--where the vessel owner as a reasonable man should anticipate an unreasonable risk of harm to the invitee, not withstanding the obvious nature of the condition, the exercise of reasonable care may require additional precautions on the part of the vessel owner for the safety of the invitee who is aboard his vessel.
 
 
 23
 This is an accurate recounting of Sec. 343A which exempts a possessor of land for liability to an invitee for harm caused by obvious dangers "unless the possessor should anticipate the harm despite such knowledge or obviousness."
 
 
 24
 Basically, therefore, the court instructed the jury that it could find liability if the owner knew, or "as a reasonable man should anticipate" harm, despite the fact that the condition was open and obvious.[10] Dean Prosser explains that, under the modern rule, the owner must not only use care not to injure the invitee by negligent activities, and warn him of latent dangers of which the owner knows, but that he must also "inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use." W. Prosser, The Law of Torts Sec. 61, at 393 (4th ed. 1971). Additionally, while in the usual case there is no obligation to protect the invitee against dangers which are known to him or which are so obvious and apparent to him that he may not reasonably be expected to discover them, "this is certainly not a fixed rule.... In any case where the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, ... where the condition is one such as icy steps, which cannot be negotiated with reasonable safety even though the invitee is fully aware of it.... In all such cases the jury may be permitted to find that obviousness, warning or even knowledge is not enough." Id. at 394-95 (emphasis added).
 
 
 25
 If we consider the condition of the rain-soaked deck on the supply vessel analogous to the ice-laden steps on a landowner's property described by Dean Prosser, we conclude that an owner may be liable, assuming Restatement Sec. 343A applies, if "as a reasonable man" he should have anticipated that ice had built up on the steps and that this ice created an unreasonable risk of harm. Utilizing the Scindia standards, however, that owner would not be liable for injuries caused by a fall on the steps unless (1) he was actually aware that the steps were icy, and (2) he knew that the invitee would do nothing to protect himself (or his employees) from danger.
 
 
 26
 Although the circumstances in which this Court before Scindia indicated an owner might be held to a duty to anticipate harm which resulted from the stevedore's negligence are not frequent, they do exist.[11] The critical fact for our analysis is that imposition of liability upon the vessel in the absence of actual knowledge is not foreclosed under the Restatement standard and under our earlier holdings. But it clearly is foreclosed under Scindia. We must conclude, therefore, that Scindia did alter the law in this Circuit with respect to the specific negligence issue now under consideration. Once loading operations have begun, the vessel owner can be held liable for injuries to employees of the stevedore resulting from open and obvious dangers only in the event of actual knowledge of the danger and actual knowledge that he cannot rely on the stevedore to remedy the situation.[12] He is not held to a duty to discover the condition or to anticipate its danger. The critical questions in this case, therefore, are 1) whether the Mobil representative knew of the hazardous conditions on deck, and 2) whether the representative knew the Teledyne crane operator was not adequately protecting the longshoremen. Only if the fact of his actual knowledge of these two factors is undisputed and not subject to jury speculation can we view the court's instructions under Secs. 343 and 343A as harmless error.
 
 
 27
 Helaire testified at trial that he saw the Mobil supervisor on the platform "three or four times in the course of the operation and during the night and that morning." However, when later recalled to the stand, he stated on cross examination that this had been on the night of February 11, when the loading was first attempted, not on the morning of the accident. The Mobil supervisor himself testified that he had no specific recollection whether he had been outside the morning of the accident, although he did admit going outside the night before. No one actually placed the supervisor on the platform at the time of the accident.
 
 
 28
 Additionally, there was no testimony to the effect that the Mobil company man had ever been apprised that the unloading operation was being carried out in spite of Helaire's protests concerning the weather conditions. Helaire testified only that he had complained to the Teledyne crane operator who was his immediate superior, and that the crane operator was the person who ordered him to continue the work because "the company man wanted the boat unloaded." The record does not support a conclusion that Mobil desired to complete the unloading regardless of dangers. Such a statement might reflect only the oil company's general desire to unload the casing as quickly and efficiently as possible under the circumstances. The Mobil supervisor himself had no recollection of Helaire's accident, nor of any events on the morning in question. He testified that he "relied" on the Teledyne crane operator and toolpusher to "shut down the operation" if weather conditions made unloading unsafe, but admitted that, as a general matter, he "periodically" checked the work taking place on the platform.
 
 
 29
 While we agree with Helaire that this evidence might be sufficient to uphold a jury verdict finding Mobil negligent under the standard announced in Scindia, this cannot be the focus of our inquiry. In order to find that the court's instructions were harmless, we must be certain that the jury finding would of necessity have been the same under a proper Scindia charge. We would have to be convinced that the jury based its verdict on the conclusion that the owner knew of the dangerous condition and knew of the stevedore's refusal to heed Helaire's requests to suspend the unloading. It was the jury's province either to believe or disbelieve Helaire's testimony.[13] While there was no testimony offered in direct opposition to his assertion on direct examination that the supervisor had knowledge of the conditions and was outside during the unloading, neither was there any other testimony supporting Helaire's claim. Moreover, Mobil does not concede either the fact that its supervisor was present or that he had knowledge of the crane operator's decision. On the contrary, Mobil vigorously contests these issues. Under these circumstances, we cannot conclude that the jury believed that the Mobil representative had actual knowledge of the conditions, and that he knew that the Teledyne crane operator was not reacting to those conditions by suspending the offloading operation. As actual, not constructive, knowledge is mandated by the Supreme Court's Scindia requisites for liability under Sec. 905(b), we must reverse and remand to the district court to give a jury upon retrial the opportunity to answer these questions.
 
 
 30
 Helaire alternatively argues that the evidence was "sufficient" to find Mobil negligent under a second category of owner liability announced in Scindia -- i.e., that Mobil had actively involved itself in the unloading process so deeply that a "contract provision, positive law, or custom" then imposed a duty on the owner to supervise the stevedoring operations. 101 S.Ct. at 1622. The trial court did not instruct the jury concerning the possibility of Mobil's control over the stevedoring operation so as to impose a duty under custom or contract or by law.
 
 
 31
 We emphasize again that our review of the verdict of the jury, then, must turn upon whether the facts relating to Mobil's involvement in the unloading operation were established with complete certainty and to such a level that contract, custom, or positive law made Mobil responsible under the Scindia analysis. We cannot draw such a conclusion. We cannot find a guarantee in the evidence that control over the unloading operation was vested in the Mobil Company representative on the platform. Yet, without such a certainty, the erroneous instructions to the jury cannot support the jury's verdict.
 
 
 32
 There is no evidence in the record to support Helaire's contention that Mobil actively participated in the unloading operation. In fact, there was considerable dispute as to the actual role played by the company man on the platform. Testimony offered at trial indicated that Teledyne, the independent contractor who was Helaire's employer, was specifically hired by Mobil to operate and oversee the unloading operations, and that the Teledyne toolpusher was the man responsible for offloading the boats and all other phases of the unloading operations. While the Teledyne workers were ultimately responsible to the Mobil supervisor, simply because Teledyne was itself responsible to Mobil, certainly this general level of responsibility cannot be sufficient to constitute "active involvement" in the unloading operation. Nor is there any significant degree of responsibility placed upon Mobil for unloading in the contract between Mobil and Teledyne.[14]
 
 
 33
 We conclude that Helaire did not establish facts concerning Mobil's activities in the unloading which would enable us to conclude that the jury necessarily relied upon those facts in reaching its verdict. A jury must resolve disputed evidence under proper instructions to draw a conclusion concerning the extent of Mobil's actual involvement in the unloading.
 
 
 34
 We emphasize that our holding evinces no opinion as to whether, when faced with determining these issues under proper instructions, a jury should or should not find Mobil negligent either by virtue of its control over the operations or by virtue of its knowledge of the dangerous conditions on deck. We say only that our decision remanding for a new trial is required by the absence of proper instructions concerning control and/or actual knowledge, and conflicting testimony as to those issues. Once we conclude that the jury finding as to Mobil's liability could have been based upon less involvement by Mobil than is required to establish liability under Scindia, there must be a new trial.
 
 II. State Law Negligence and Indemnification
 
 35
 After Mobil had been sued by Helaire for his injuries sustained during the vessel unloading procedure, it made a third party demand against Cheramie and its underwriters claiming contractual indemnity under the charter agreement and under the protections and indemnity (P & I) policy in which Mobil was named as an additional insured. The district court entered judgment for Cheramie on this third party claim, but granted Mobil recovery over against the Cheramie P & I underwriters. The underwriters now appeal, claiming that the trial court erred in instructing the jury only as to Mobil's potential liability as "vessel owner" under 33 U.S.C. Sec. 905(b). They argue that Mobil's fault, if any, was in its capacity as platform owner not in its capacity as "vessel owner." The claim that Mobil is liable as the platform owner is a claim under state law. In this case La.Civ. art. 2315 would apply. The underwriters' argument is in furtherance of their theory that the P & I contract under which they are liable only indemnified Mobil in its role as vessel owner and not in its role as platform owner. We reject this argument and affirm the district court's dismissal of the state law negligence claim and its indemnification order.
 
 
 36
 It is undisputed that Mobil, as time charterer of the vessel, would normally be covered under the broad definition of "vessel owner" under 33 U.S.C. Sec. 902(21)[15] and thus subject to potential liability under Sec. 905(b). Mobil claims against the underwriters for indemnity because it is vessel owner under Sec. 905(b). Then, 905(b) states that 905(b) remedies are "exclusive of all other remedies available", except those otherwise provided in LSHWCA. This provision negates a claim under state law which the underwriters would not need to indemnify. The underwriters, however, argue that 905(b) does not control at all because the activities of Mobil which related to Helaire's claim had nothing to do with Mobil's role as time charterer, i.e. vessel owner, but instead were a direct consequence of Mobil's platform activity. According to the underwriters, there was no evidence that Mobil was at fault with respect to any of the acts associated with its responsibilities as time charterer in assigning cargo or assigning the platform as the vessel's destination. Rather, they charge Mobil as having negligently permitted the unloading in spite of the inclement storm and sea conditions, acts related directly to Mobil's capacity as a platform owner.
 
 
 37
 In support of this argument the underwriters cite Lanasse v. Travelers Insurance Co., 450 F.2d 580 (5th Cir.1971), cert. denied sub nom. Chevron Oil Co. v. Royal Insurance Co., 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972), in which the plaintiff was injured when a crane operator on the platform negligently lifted a heavy welding machine from the deck of a time-chartered vessel during the unloading of cargo. There, as in the instant case, the defendant possessed the "dual identity" of platform owner/time charterer. Upholding a jury verdict that the vessel was liable as a platform operator, not as vessel owner or time charterer, the court said that the unloading procedure "was not even remotely related to the operation, navigation or management of the vessel", 450 F.2d at 583. The underwriters argue that here, too, the vessel was no more than the "inert locale of the injury" which is not enough to create the required "causal operational relation" between the vessel and the resulting injury. Id. at 584.
 
 
 38
 We disagree. In Lanasse, the jury's finding of negligence was predicated upon the negligent manner in which a platform-based crane was operated. The operation of the crane on the platform was in no way related to the navigation or management of the vessel. In the instant case, nothing happened on the platform to cause the accident.[16] The negligence with which Mobil was charged was based on its actions or omissions in permitting the unloading of cargo on the vessel to continue despite the obvious danger created by the poor weather conditions. As pointed out correctly by the district court, this kind of boat-unloading decision was "traditionally and historically vessel-related". In fact, but for the exclusivity provision of the LSHWCA, Helaire would have been entitled to coverage under the Jones Act, 46 U.S.C. Sec. 688. See International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926) (stevedore employee in stowing freight in hold of ship was "seaman" for purposes of statute giving seamen cause of action for personal injury suffered during the course of their employment). Clearly maritime, rather than state law, applies where the situs of the injury was on navigable waters and the negligence bears a significant relationship to traditional maritime activity. See Executive Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). The state law claim was properly dismissed under the LSHWCA's exclusivity provisions.
 
 
 39
 Moreover, even assuming that Mobil's liability may have arisen from its status as platform operator, indemnification was still properly awarded. The indemnity policy which named Mobil as assured was a standard fleet insurance policy providing assured's coverage "against liabilities ... in respect of the vessel", with one significant deletion. The words "as owner of the vessel named herein" were deleted from the policy.[17] The district court found that this deletion was intended to provide coverage for Mobil regardless of the capacity in which Mobil was sued. Certainly this finding was not clearly erroneous. The policy in contention here makes no distinction between coverage for unloading activities on the one hand and platform activities on the other. Consequently, the court's indemnification order is proper regardless of whether Mobil incurred liability as a "vessel owner" or as a "platform operator".
 
 III. Prejudgment Interest
 
 40
 Helaire challenges the failure of the trial court to award prejudgment interest.[18] Because we are reversing the trial court's judgment and remanding for a new trial, the correctness of the court's failure to award prejudgment interest is no longer before us. We do, however, mention the proper legal standard upon which its award or denial of prejudgment interest should be based. While we have said that the awarding of prejudgment interest lies within the discretion of the trial judge, we have also said that the allowance of prejudgment interest in maritime law is the rule, rather than the exception. "As a general rule, prejudgment interest should be awarded in admiralty cases--not as a penalty, but as compensation for the use of funds to which the claimant was rightfully entitled. Discretion to deny prejudgment interest is created only when there are 'peculiar circumstances' that would make it inequitable for the losing party to be forced to pay prejudgment interest." Noritake Co., Inc. v. M/V HELLENIC CHAMPION, 627 F.2d 724, 728 (5th Cir.1980) (citations omitted); Masters v. Transworld Drilling Co., 688 F.2d 1013, 1014 (5th Cir.1982). We stated in Noritake that where the court refuses to award prejudgment interest, "the best practice would be for it to detail the peculiar circumstances it has found, and specifically indicate that it is denying prejudgment interest as an exercise of the discretion created by the existence of peculiar circumstances." 627 F.2d at 729 n. 4.
 
 CONCLUSION
 
 41
 Prior to the decision of the United States Supreme Court in Scindia Steam Navigation Co. v. De Los Santos, this Circuit held a vessel owner liable under 33 U.S.C. Sec. 905(b) for injuries to a longshoreman from open and obvious dangers if the owner knew, or if he should reasonably have foreseen, the dangerousness of the condition. Scindia makes clear, however, that liability in such cases can be imposed only if the owner has actual knowledge of the dangerous condition as well as actual knowledge that the stevedore is not acting to protect the longshoreman. Because the trial court's instructions did not restrict Mobil's liability to these situations of actual knowledge, we reverse the judgment of the court relating to Mobil's liability and remand for a new trial. We affirm the judgment exonerating Cheramie Brothers and dismissing the state negligence claim brought under La.Civ.Code Art. 2315. We also affirm the indemnification order granting Mobil recovery from Cheramie's underwriters in the event Mobil is found liable upon retrial.
 
 
 42
 AFFIRMED IN PART AND REMANDED FOR A NEW TRIAL IN PART.
 
 
 
 *
 District Judge of the Northern District of Illinois, sitting by designation
 
 
 [1]
 The jury awarded Helaire $135,000. This amount was reduced by $40,615.90 which was awarded to Teledyne as recoupment for disability payments paid Helaire
 
 
 [2]
 These underwriters included Highlands Insurance Company, American General Fire and Casualty Company, St. Paul Mercury Insurance Company, Citadel Insurance Company and Lloyd's Insurance Company of London
 
 
 [3]
 Helaire testified that the order to begin unloading was given by the Teledyne crane operator, his immediate supervisor
 
 
 [4]
 Mobil argues that the jury's exoneration of Cheramie Brothers from liability should be overturned because the court's instructions were based on the pre-Scindia tort standards. Because we find that any difference between the Scindia requirements and those predicated upon Sec. 343(a) would be to impose stricter standards upon which liability could be based, Mobil's argument of prejudicial error has no applicability where an owner has been cleared of liability. If the jury found that Cheramie Brothers was free from responsibility under either the actual or the constructive knowledge tests of Sec. 343(a), it necessarily follows, a fortiori, that Cheramie would also be exonerated under a standard that imposed liability only for actual knowledge. The sole consequence of a holding that Scindia mandated a duty inconsistent with the Restatement standard would be that an owner be given a new trial based on instructions which limited liability to situations where it had actual knowledge of the dangerous condition as well as knowledge that the judgment of the stevedore was "obviously improvident". The discrepancy here between the Scindia and Restatement standards accrued to Cheramie's benefit, not prejudice. See Moser v. Texas Trailer Corp., 694 F.2d 96, 98 (5th Cir.1982)
 
 
 [5]
 Section 905(b) provides in relevant part:
 In the event of injury to a person covered under this Act caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 33 of this Act, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this Act.
 
 
 [6]
 Section 343 states,
 A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
 (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
 (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
 (c) fails to exercise reasonable care to protect them against danger.
 Section 343A continues,
 (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
 (2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.
 
 
 [7]
 This Court considered that the approach followed by the First and Third Circuits would enable an owner to insulate himself from liability for obvious defects merely by agreeing to relinquish control of the work area to the stevedore, which would thwart the congressional intent to retain a negligence action against the owner. Mallard v. Aluminum Co. of Canada, Ltd., 634 F.2d 236, 243 (5th Cir.1981)
 
 
 [8]
 Scindia addresses the extent of the owner's liability in situations where a longshoreman is injured as a result of the negligence of the stevedore
 
 
 [9]
 The exact height of the seas was disputed by Mobil and Cheramie. No one, however, denied that the conditions that day were poor. If the jury found there was a "dangerous condition" on the ship as the result of the rain and heavy seas, it goes without saying that such a condition was "open and obvious". The open nature of the condition, rather than the magnitude of the storm, defines our inquiry
 
 
 [10]
 Restatement (Second) of Torts Sec. 343, comment a (1965), instructs that Sec. 343 "should be read together with Sec. 343A."
 
 
 [11]
 See, for example, Guidry v. Continental Oil Co., 640 F.2d 523 (5th Cir.), cert. denied, 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981), where we found there was an insufficient basis to support a third party claim for demands for negligence of the owner in a Sec. 905(b) action "absent a showing that the owner knew or had reason to know of any unreasonably dangerous condition and failed to exercise reasonable care to make the condition safe or warn "the plaintiff." Id. at 532. (emphasis added); Mallard v. Aluminum Co., 634 F.2d 236, 243 (5th Cir.1980)
 
 
 [12]
 The opinion in Scindia recognized that the owner's actual knowledge of a dangerous condition which later injured a longshoreman would not in itself make him negligent. It might well be "reasonable" for the owner to rely on the stevedore's judgment that the condition, though dangerous, was safe enough. 101 S.Ct. at 1626
 
 
 [13]
 We note that Helaire's credibility was attacked by the defendants in their attempts to show that he grossly exaggerated the height of the seas and the general weather conditions during the unloading
 
 
 [14]
 The contract provided "Mobil shall have no directional control of the contractor or its employees and agents except in the results to be obtained. The actual performance and superintendence of all work hereinafter shall be by contractor, Teledyne Movable Offshore, but Mobil shall have access to or have a representative or representatives who shall at times have access to the premises for the purposes of observing depths or inspecting the work performance performed by a contractor in order to determine whether in Mobil's opinion such work is being performed by contractor in accordance with all provisions of the contract."
 
 
 [15]
 Title 33 U.S.C. Sec. 902(21) provides: "The term 'vessel' means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bear boat charterer, master, officer, or crew member." An owner "pro hac vice" for purposes of LSHWCA is one who assumes by charter or otherwise "exclusive possession, control, command and navigation" of the vessel for specific period of time, has complete, though perhaps only temporary dominion over the vessel entrusted to him and commands her navigation and is entitled to avail himself fully of her services. Bernier v. Johns-Manville Sales Corp., 547 F.Supp. 389, 394 (D.Me.1982)
 
 
 [16]
 The fact that Mobil's representative was physically on the platform and not on the vessel is irrelevant. See Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc., 462 F.Supp. 485, 490 (E.D.La.1978), where the charterer oil company negligently dispatched a vessel into heavy weather, injuring a passenger. The insurance underwriters claimed that the oil company's sole liability was as a land-based company and was unrelated to the vessel. The district court disagreed, explaining that "[t]he fact that the decision to dispatch the crew boat was made on fixed ground hardly detracts from the maritime vessel-centered character of the negligence."
 
 
 [17]
 The relevant portion of the policy provided as follows:
 "The Assurer hereby undertakes to make good to the Assured ... all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:
 (1) Liability for ... personal injury to ... any person ...
 (14) Costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to conditions and limitations hereinafter provided..."
 
 
 [18]
 The court ordered "legal interest" to be paid on the jury's award from the time of the judgment until paid. No mention was made with respect to either the granting or denial of prejudgment interest