**Barbara RANDALL, et al.**

v.

**CHEVRON U.S.A., INC., et al.**

**Nos. 89–4346, 89–4795.**

United States District Court,
E.D. Louisiana.

March 16, 1992.

---

**31.** *Hartford Accident & Indem.,* 799 F.2d at 1096.

Louis John Cosenza, Randy Jay Ungar, Ungar & Wheelahan, New Orleans, La., for Barbara S. Randall.

Neal Douglas Hobson, Marion Fagan Skalley, John Randall, Santa Cruz, Milling, Benson, Woodward, Hillyer, Pierson & Mil-ler, New Orleans, La., for Chevron U.S.A. Inc.

David John Plavnicky, Robert Jeffrey Bridger, Lea, Plavnicky & Moseley, New Orleans, La., for Sea Savage Inc.

John Frederick Kessenich, Michael G. Helm, Emmett, Cobb, Waits & Kessenich, New Orleans, La., for American Home Assur. Co.

## MEMORANDUM AND ORDER

SEAR, District Judge.

Theodore Randall drowned while attempting a swing rope transfer from a fixed platform in the Gulf of Mexico to the M/V SEA SAVAGE. At the time of his death, he was employed by Chevron U.S.A., Inc. ("Chevron"). Chevron had time chartered the M/V SEA SAVAGE, from Sea Savage, Inc., owner of the vessel. Plaintiff, Barbara Randall, individually, on behalf of the estate of her late husband and her children, sought damages from Chevron and Sea Savage, Inc. Chevron in turn impleaded Underwriters Subscribing to Policy no. 12890 ("Underwriters"),[1] Sea Savage, Inc.'s primary protection and indemnity ("P & I") insurer, and American Home Assurance Company ("American Home"), Sea Savage, Inc.'s excess P & I insurer. Chevron sought insurance coverage because it was named an additional assured under the Sea Savage, Inc. policies.

On October 11, 1991, Underwriters filed a motion for summary judgment on Chevron's insurance claim. On November 5, 1991, during the pretrial conference, conducted on the record, the Underwriters' motion was granted because Underwriters argued and I ruled that the claim asserted against Chevron by plaintiff Williams fell outside the scope of the policy. The policy limits coverage to liability incurred "as owner" of an insured vessel and Chevron's liability could only be incurred as "time charterer," not "owner."[2] On November

---

1. The Underwriters consist of Royal Insurance Company, Americas Insurance Company, Underwriters at Lloyds, and Texas Marine Underwriters Agency, Inc. *See* Exhibit C attached to Chevron U.S.A. Inc.'s Opposition to American Home Assurance Company's Motion to Dismiss, Doc. No. 191, p. 26 (hereinafter "Primary P & I Policy").

2. A Minute Entry documenting this action was not filed.

7, 1991, American Home adopted and urged the same motion as the one granted in favor of Underwriters. Prior to beginning the trial, American Home's motion was granted for the same reason.[3]

This matter was heard without a jury. Following trial on the merits, Chevron, in its capacity as time charterer, was found to have negligently ordered the vessel to encounter dangerous seas.[4] Accordingly, Chevron was cast in judgment and its negligence was fixed at twenty-five percent of plaintiff's total damages.

■ Chevron filed a motion styled "Motion for New Trial," which in fact seeks reconsideration of my ruling on its entitlement to insurance coverage in light of the findings of fact made following the trial. Sea Savage, Inc., on behalf of Underwriters, opposes reconsideration.[5] After reviewing memorandum of counsel and applicable law, I find that reconsideration is appropriate. I further find that no prejudice will result from reconsideration of my previous ruling, even though the insurers did not directly participate in the trial of this action.

First, if Chevron is entitled to insurance coverage, that coverage does not impose upon the insurer a duty to defend its assured. The policy covers "[c]osts, charges and expenses, reasonably incurred and paid by the Assured in defense against any liability insured against." Yet, no where in the policy does the assurer agree to provide the assured with a defense. Rather, pursuant to the terms of the policy regarding the defense of any liability insured against under the policy, "the Assured area obligated to and shall take steps to protect their (and/or the Assurer's) interests as would reasonably be taken in the absence of this or similar insurance."[6]

Second, if Chevron is entitled to coverage, the Underwriters interest in defending this action was not affected as a result of its dismissal as a named defendant for the reason that the Underwriters at all times remained exposed for any liability that would be imposed upon its named assured, Sea Savage, Inc., and for their assured's defense costs. The policy provides,

[t]he Assurer hereby undertakes to make good to the Assured ... all ... (14) [c]osts, charges and expenses, reasonably incurred and paid by the Assured in defense against any liability insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided.

### GENERAL CONDITIONS AND/OR LIMITATIONS

Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence and give prompt notice thereof and forward to the Assurer as soon as practicable after receipt thereof, all communications, processes, pleadings and other legal papers or documents relating to such occurrences.

The Assured shall not make any admissions of liability, either before or after any occurrences which may result in a claim for which the Assurer may be liable. The Assured shall not interfere in any negotiations of the Assurer, for settlement of any legal proceedings in respect of any occurrence likely to give rise to a claim under this policy, the Assured are obligated to and shall take steps to protect their (and/or the Assurer's) interests as would reasonably be taken in the

---

**3.** A Minute Entry documenting this action was not filed.

**4.** *Moore v. Phillips Petroleum Co.*, 912 F.2d 789, 792 (5th Cir.1990) (holding that ordering a vessel to encounter dangerous seas is an act done as a time charterer, rather than as a platform owner) (citing *Graham v. Milky Way Barge, Inc.*, 824 F.2d 376, 388 (5th Cir.1987)).

**5.** Memorandum in Response to Chevron's Post–Trial Motions and Memoranda on Indemnity and Insurance Issues, Doc. No. 314, p. 3–7.

**6.** *See* Primary P & I Policy, third page of the form found at p. 20.

absence of this or similar insurance. If the Assured shall fail or refuse to settle any claim as authorized by Assurer, the liability of the Assurer to the Assured shall be limited to the amount for which settlement could have been made.

Whenever required by the Assurer the Assured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with the Assurer in the defense of any claim or suit or in the appeal from any judgment, in respect of any occurrence as hereinbefore provided.[7]

The policy provisions prohibiting the assured from interfering in settlement negotiations and compelling the assured to cooperate in any defense suggest that Underwriters had the option to defend its assured, Sea Savage, Inc., if it chose to. Yet, despite its potential exposure to any liability that might be imposed upon its assured and its obligation to reimburse defense costs incurred by its assured, Underwriters elected not to provide Sea Savage, Inc. with a defense nor to participate in the trial by assisting Sea Savage, Inc.'s retained counsel. Rather, Underwriters relied exclusively on Sea Savage, Inc.'s retained counsel to protect their interest, as it relies on Sea Savage in this motion. Because the Underwriters had the opportunity to participate and defend this action, I find that they are not prejudiced by reconsideration of my previous ruling dismissing them and their subsequent absence from the proceeding.

■ Underwriters admit that Chevron was named as an additional assured on their protection and indemnity policy.[8] They contend, however, that the policy does not provide Chevron coverage for its loss because the policy terms limit coverage to losses incurred by Chevron as owner of an insured vessel. In denying coverage, the Underwriters rely on the following provision: "The Assurer hereby undertakes to make good to the Assured ... all such loss and/or damage and/or expense as the Assured shall *as owners* of the vessel named herein have become liable to pay and shall pay on account of ... [l]iability for loss of life of ... any person." [9] The Underwriters contend that because Chevron incurred its liability as time charterer and because maritime law does not characterize a time charterer as an owner of a vessel, Chevron is not covered by the policy.

First, Chevron argues that the policy permits additional assureds, such as Chevron, to delete the "as owner" clause and that it was in fact deleted. Specifically, the policy provides:

The so-called Other Than Owner, As Owner and/or Other Insurance clauses contained in this Policy shall not apply in respect of Named Assureds and shall also be deemed deleted as may be required by contract in respect of additional assureds. The insurance shall be deemed primary insurance as required by contract.

Notwithstanding the above, this clause shall not extend the insuring conditions beyond vessel operations.[10]

Thus, an additional assured can have any or all of these clauses deleted by way of a contract. Indeed, Chevron expressly had the "other than owner" clause deleted by an endorsement to the policy.[11] Specifically, that endorsement states: "With respect to ... Chevron U.S.A. ..., it is noted and agreed that the so called 'other than owners' clause contained in this policy shall not apply." [12] Chevron contends that the endorsement deleting the "other than owner" clause served to delete the "as owner" clause as well. I disagree.

The phrases "other than owner" and "as owner" each has a distinct and separate

---

**7.** *Id.*

**8.** Memorandum in Support of its Motion for Partial Summary Judgment on Chevron's Claims for Indemnity and Third Party Demand, Doc. No. 263, p. 6 (hereinafter "Doc. No. 263"). *See* Primary P & I Policy, p. 8.

**9.** Primary P & I Policy, page one of the form found at p. 20 (emphasis added).

**10.** Primary P & I Policy, p. 12.

**11.** Primary P & I Policy, Endorsement p. 1.

**12.** *Id.*

purpose. The "other than owner" clause refers to the following provision:

It is expressly understood and agreed if and when the Assured under this policy has any interest other than as a shipowner in the vessel or vessels named herein, in no event shall the Assurer be liable hereunder to any greater extent than if such Assured were the owner and were entitled to all the rights of limitation to which a shipowner is entitled.[13]

The intent of the "other than owner" clause is "to limit the underwriter's liability to an amount no greater than that to which the assured would be entitled to limit liability if that assured were the owner."[14] Thus, deleting the "other than owner" clause simply waives the insurer's right to limit its liability to that of the shipowner, who possesses the statutory right to limit liability to the value of its vessel and pending freight.[15]

The "as owner" clause, on the other hand, focuses on the status of the assured when the claim arose and limits the insurer's exposure to those liabilities that can be incurred as owner of a vessel.[16] Thus, deleting the "as owner" clause expands the capacities in which insured losses can occur[17] yet, under the terms of the Underwriters' policy, the loss still must pertain to vessel operations.[18] Because the purpose of the "other than owner" clause differs from that of the "as owner" clause, expressly deleting one does not effectively delete the other.

In support of its contention that the endorsement deleting the "other than owner"

phrase also served to delete the "as owner" phrase, Chevron cites *Helaire v. Mobil Oil Corp.*,[19] in which the district judge considered the same coverage provision at issue here and found that the "as owner" restriction had been deleted from the policy. The opinion however does not indicate how the time charterer had the "as owner" restriction deleted. The opinion simply states: "We take particular notice of the deletion of the clause 'as owners of the vessel herein,' from the language of the policy."[20] Later the court states:

Secondly, the charter agreement required [the vessel owner] to furnish insurance to [the time charterer] with endorsements removing the "other than owner" limitation clauses. This was done by deleting the restrictive wording from the insuring agreement.... The deletions remove from this policy the restrictive coverages "as owner of the vessel"....[21]

Chevron asserts that its endorsement deleting the "other than owner" clause "is the exact same deletion as in *Helaire*," which served to delete the "as owner" restriction.[22] Yet, Chevron does not elaborate on how it reached this conclusion and I do not find that the *Helaire* opinion supports Chevron's contention.

Chevron alternatively submits that the time charter party required that the "as owner" restriction be deleted. Under the terms of the policy, the "as owner" clause can be deleted by another contract.[23] Chevron contends that the following provi-

---

**13.** Primary P & I Policy, page 3 of form found at p. 20.

**14.** A. Parks, *The Law and Practice of Marine Insurance and Average* 1024 (1987).

**15.** *See* 46 U.S.C.App. § 183.

**16.** *Id.* at 913.

**17.** *Cf. Helaire v. Mobil Oil Co.*, 709 F.2d 1031 (5th Cir.1983) (By deleting the "as owner" clause, the P & I policy covers liabilities incurred in the assured's capacity as platform owner.)

**18.** Primary P & I Policy, p. 12. Following the provision permitting deletion of the "as owner" clause, the policy provides that, "Notwithstand-

ing the above, this clause shall not extend the insuring conditions beyond vessel operations."

**19.** 497 F.Supp. 633 (W.D.La.1980), *modified* 709 F.2d 1031 (5th Cir.1983).

**20.** *Id.* at 636.

**21.** *Id.* at 637.

**22.** Chevron's Memorandum in Support of its Motion for New Trial, Doc. No. 305, p. 9.

**23.** "The so-called ... As Owner ... clause[ ] ... shall ... be deemed deleted as may be required by contract in respect of additional assureds." Primary P & I Policy p. 12.

sion in the time charter party requires deletion of the "as owner" restriction: "[O]wner will ... provide and maintain insurance covering all liabilities which might arise from the possession, management, manning, navigation and operation of the vessel, ... on which policies Chevron shall be included as party assured...." [24] That language indeed requires Sea Savage, Inc. to provide insurance coverage for all liabilities arising from the "possession, management, manning, navigation and operation" of the vessel. Yet, that language cannot modify Sea Savage, Inc.'s insurance policies because the Underwriters were not a party to the charter party. Accordingly, the "as owner" restriction never was deleted.

■ The policies therefore provide insurance coverage to Chevron only if Chevron's incurs liability "as owner" of the vessel. Having found Chevron liable in its capacity as time charterer, the issue becomes whether a time charterer incurs liability "as owner" of a vessel. No court yet has squarely addressed whether a protection and indemnity policy restricted to losses incurred "as owner" covers liability incurred as time charterer, although the Fifth Circuit, and district courts within this circuit, have considered related issues. In so doing, the Fifth Circuit has advanced two legal propositions that suggest that a time charterer indeed incurs liability as owner of a vessel. But, the holdings on which these propositions rely rest on facts that are absent from this action. Therefore, they are not dispositive.

The first proposition derives from the Fifth Circuit's opinion in *Lanasse v. Travelers Insurance Co.*,[25] where it addressed the "as owner" restriction in a vessel owner's P & I policy. The court reasoned that, to incur liability "as owner," "[t]here must be some causal operational relation between the vessel and the resulting inju-

ry." [26] In this action, Chevron's contribution to Randall's death, ordering the vessel to encounter dangerous seas, clearly is related to the vessel. As such, pursuant to the proposition advanced in *Lanasse*, Chevron incurred its liability "as owner" of the vessel. But I do not find this proposition dispositive of this issue, in light of the holding in *Lanasse* and its progeny.

In *Lanasse*, Chevron had time chartered a vessel from Cheramie to assist in its operations on a fixed offshore production platform, which it owned. Chevron ordered the vessel to move a welding machine from one side of the platform to the other. Chevron's crane operator loaded the machine onto the vessel. The vessel moved to the other side of the platform. In attempting to unload the machine from the vessel, the crane operator allowed the machine to slip from its hold and it nearly crushed Lanasse, a crew member aboard the vessel. The negligence of Chevron's crane operator was found to be cause of Lanasse's injury. That negligence derived solely from Chevron's capacity as platform owner, rather than time charterer.[27] Accordingly, the court held that Chevron did not incur its liability "as owner" of the vessel and denied Chevron coverage from the vessel owner's P & I insurers. The court reasoned that the only relation the injury had to the vessel was that it occurred on the vessel; no vessel-related negligence caused the injury. The Fifth Circuit then concluded, in dicta, that some causal relation between the vessel and the injury was necessary. It did so simply to emphasize that the locale of the injury alone does not mean liability was incurred "as owner" of a vessel. Additionally, no court has solely relied on the casual relation between the vessel and the resulting injury to hold that liability was incurred "as owner" of the vessel. Thus, it is not clear whether the Fifth Circuit would hold that Chevron incurred its liability "as own-

---

24. Doc. No. 263, Exhibit A.

25. 450 F.2d 580 (5th Cir.1971), *cert. denied,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972).

26. *Id.* at 584 (emphasis added).

27. *Id.* at 584.

er" simply because its negligent act is related to the vessel.

The second legal proposition that appears to control this issue is the Fifth Circuit's statement that, "[i]nsurance coverage extends only to the liability the insured incurs in its capacity as an owner, operator, or *charterer* of the vessel/s named in the policy." [28] This proposition suggests that, having incurred its liability as time charterer, Chevron is covered by the Insurers' P & I policies. But, it is not certain that, when the Fifth Circuit used the term "charterer," it was referring to time charterers, rather than only demise or bareboat charterers, who clearly incur liability "as owners" of a vessel. [29]

Moreover, the cases relied upon in advancing this proposition do not hold that a time charterer's liability is incurred "as owner" of a vessel, even though the cases do involve a time charterer's liability and the extent of the vessel owner's P & I coverage. For instance, after stating the above proposition, the Fifth Circuit simply held that the vessel on which the personal injury occurred was not listed on the P & I policy, thus the policy afforded the time charterer no coverage. [30] Similarly, the Fifth Circuit has held that a vessel owner's

P & I policy did not provide coverage for the time charterer's liability incurred in its capacity as platform owner. [31]

On two occasions, the Fifth Circuit has held that the vessel owner's P & I insurer owed coverage to the time charterer. But, in one, the insurance policy recognized the assured's right to time charter the vessel and expressly provided coverage "for the account of the owner and charterer." [32] In the other, the "as owner" restrictive clause had been deleted from the P & I policy. [33] Because the key fact supporting each of these holdings is absent here, these cases do not control whether a time charterer's liability arises "as owner" of a vessel. In the absence of dispositive jurisprudence, I find the general principles of maritime law persuasive. [34]

▪ General maritime law treats a demise charterer as a vessel owner, termed *pro hac vice*, because the demise charterer obtains full possession and control of the vessel, such that it mans and supplies the vessel. Conversely, in a time charter, the vessel owner retains possession and control and crews the vessel; the time charterer simply directs the movement of the ves-

**28.** *Motors Ins. Co. v. Bud's Boat Rental, Inc.,* 917 F.2d 199, 203 (5th Cir.1990).

**29.** *See, e.g., Stocksill v. Petty Ray Geophysical,* 888 F.2d 1493, 1496 (5th Cir.1989); *Offshore Logistics Servs. v. Mutual Marine Office,* 462 F.Supp. 485, 489–92 (E.D.La.1978) (Sear, J.), *dismissed on other grounds,* 639 F.2d 1168 (5th Cir.1981). I held that the demise charterer's negligent act of ordering a crew change in bad weather satisfied the *Lanasse* causal operational relation nexus and was done "as owner." I however expressly relied on admiralty law's characterization of demise charterers as owners *pro hac vice.* Thus, the vessel owner's P & I policy, which contained the same restriction here—that is, it limited coverage to losses incurred as owners of the vessel, covered the charterer.

**30.** *Id.* at 203.

**31.** *Marathon Oil Co. v. Mid–Continent Underwriters,* 786 F.2d 1301, 1303 (5th Cir.1986). The court did not address whether the policy provided coverage for liability incurred as a time charterer because the insurer had settled with the injured plaintiff on its behalf, on behalf of the vessel owner and on behalf of the time charter-

er to the extent of its liability incurred in that capacity. Thus, the court did not have to address the issue presented here. As such, the court does not describe the policy's terms. Without knowing the policy's terms, that the insurer appeared to recognize its coverage for the time charterer's liability, by settling on behalf of the time charterer, in no way suggests that the Insurers' policy too covers Chevron's liability.

**32.** *Wedlock v. Gulf Mississippi Marine Corp.,* 554 F.2d 240, 242 n. 3 (5th Cir.1977).

**33.** *Helaire v. Mobil Oil Co.,* 709 F.2d 1031 (5th Cir.1983).

**34.** As a related issue, I note that several courts have held that a barge owner is not entitled to insurance coverage from the tug's insurer, whether or not the barge owner has time chartered the tug and/or has been named as an additional assured. *In re the ADMIRAL TOWING AND BARGE CO.,* 767 F.2d 243 (5th Cir. 1985); *Dow Chemical Company v. Tug THOMAS ALLEN,* 349 F.Supp. 1354 (E.D.La.1972); *Motes v. Hugh Eymard Towing Co.,* 1989 WL 1843 (E.D.La.1989).

sel.[35] General maritime law therefore does not bestow owner *pro hac vice* status upon the time charterer. But, the Longshore and Harbor Workers Compensation Act (LHWCA) does. LHWCA defines "vessel" as

> any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.[36]

The definition thus characterizes a "charter" as a vessel owner. That the definition elsewhere specifically lists "owner pro hac vice" and "bare boat charterer" indicates that "charter" must refer to time charterers. Indeed, the Fifth Circuit has adopted this interpretation and concluded that a time charterer is a vessel owner.[37]

In *Helaire v. Mobil Oil Co.*, Mobil had time chartered a vessel from Cheramie, the vessel owner. Mobil sought coverage from the vessel owner's P & I insurers. The insurers argued that Mobil's negligence arose from its capacity as platform owner, rather than as time charterer and that their P & I policy only covered Mobil in its role as vessel owner, not as platform owner. Thus, they contended that Mobil was not covered by their policy. The Fifth Circuit stated,

> It is undisputed that Mobil, as time charterer of the vessel, would normally be covered under the broad definition of "vessel owner" under 33 U.S.C. § 902(21) [quoted above] and thus subject to potential liability under § 905(b).[38] Mobil claims against the underwriters for in-

demnity because it is vessel owner under 905(b).[39]

The court never squarely held that, if Mobil's liability arose from its status as time charterer, it likewise was incurred as a vessel owner and Mobil would be entitled to insurance coverage, but that conclusion is implicit in the foregoing statement.

The court ultimately held that Mobil's act of negligence arose from its capacity as time charterer and that the P & I policy provided Mobil with coverage because the "as owner" restrictive clause had been deleted from the P & I policy. The court found that, in the absence of the "as owner" restriction, the policy covered Mobil's liability "regardless of whether Mobil incurred liability as a 'vessel owner' or as a 'platform owner.'"[40] I find this holding significant. If deleting the "as owner" restrictive phrase expands coverage to include liabilities incurred as platform owner, it follows that incurring liability "as owner" encompasses liability incurred as time charterer.

Because the LHWCA treats a time charterer as a vessel owner and because Chevron's negligence arose from its status as time charterer, Chevron incurred its liability "as owner" of the vessel. Accordingly, the Underwriters owe Chevron insurance coverage.

 Alternatively, if Sea Savage, Inc.'s P & I policy does not provide coverage for Chevron's liability, then Sea Savage, Inc. must provide coverage to Chevron. In the charter party, Sea Savage, Inc. agreed to "provide and maintain insurance covering all liabilities which might arise from the possession, management, manning, navigation and operation of the vessel, ... on which policies Chevron shall be included as

---

**35.** T. Schoenbaum, *Admiralty and Maritime Law* 382 (1987).

**36.** 33 U.S.C. § 902(21).

**37.** *Helaire v. Mobil Oil Co.*, 709 F.2d 1031, 1041 (5th Cir.1983). *See also Aucoin v. Pelham Marine, Inc.*, 593 F.Supp. 770, 772 (W.D.La.1984) (holding that a time charterer is a vessel for purposes of LHWCA); A. Parks, *supra* note 14, at 884 ("Several cases hold that the time charterer is a viable 905(b) defendant within the mean-

ing of the term 'vessel,' which L.H.W.C.A. defines to include 'charterer [sic] or bare boat charterer.' ").

**38.** Section 905(b) permits a person covered by the LHWCA who is injured as a result of the negligence of a vessel, to recover damages for those injuries from the vessel.

**39.** *Helaire,* 709 F.2d at 1041.

**40.** *Id.* at 1042.

party assured...." [41] I previously held that Chevron's negligent act of ordering the vessel to encounter dangerous seas is an act of management or operation of the vessel.[42] As such, Sea Savage, Inc. was contractually obligated to provide coverage for Chevron's liability. If its P & I policy does not provide Chevron with coverage, then Sea Savage, Inc. breached its agreement and must provide the coverage to Chevron.[43]

Finally, the excess P & I policy provisions tailor the primary P & I policy provisions. The excess insurer, American Home, "agrees to indemnify the Assured for all liability, loss, damage or expense insured against under the ... 'Primary Policies,'" for the excess over the limits of the primary policy.[44] The excess policy further provides that it "shall follow absolutely the Underlying Policy with respect to the naming of Additional Assureds." [45] Accordingly, because the excess P & I policy provides identical coverage as the primary policy, this decision applies to American Home Assurance Company as well.[46]

Accordingly,

IT IS ORDERED that the protection and indemnity policies issued by Underwriters Subscribing to Policy no. 12890 and American Home Assurance Company owe Chevron, U.S.A., Inc. insurance coverage over plaintiff Randall's claim.

---

41. Doc. No. 263, Exhibit A.

42. Memorandum and Order dated February 18, 1992, 788 F.Supp. 1391, 1395.

43. *Stocksill v. Petty Ray Geophysical,* 888 F.2d 1493, 1496 (5th Cir.1989) (holding that, if the vessel owner fails to obtain the insurance coverage on behalf of the time charterer that it contractually agreed to provide, then the vessel owner must provide the time charterer with coverage).

44. Motion to Dismiss on Behalf of American Home Assurance Company, Doc. No. 178, Exhibit A, p. 3 (hereinafter "Excess P & I Policy").

45. *Id.* at p. 5.

46. *See* American Home Assurance Company's Memorandum in Support of its Motion for Summary Judgment, Doc. No. 296.