Jerry B. **HODGEN** and Bobbie Sue **Hodgen**

v.

**FOREST OIL CORPORATION,** Ronald J. Doucet, A & A Boats, Inc., and C & G Marine Service, Inc.

**Civ. A. No. 93–0322.**

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

May 27, 1994.

See also 862 F.Supp. 1567.

Jerry G. Jones, Jones & Alexander, Cameron, LA, for plaintiff and intervenor-defendant Jerry B. Hodgen.

Donald Coleman Brown, Todd M. Ammons, Woodley, Williams, Fenet, Palmer, Boudreau & Norman, Lake Charles, LA, for defendants, cross-claimants, third party plaintiffs and intervenor-defendants, Forest Oil Corp., in its capacity as platform owner, and Ronald J. Doucet.

D. Kirk Boswell, Stephen E. Mattesky, Terriberry, Carroll & Yancey, New Orleans, LA, for third-party defendant, Commercial Union Ins. Co. and defendants, cross-defendants, intervenor-defendants and third-party plaintiffs, A & A Boats, Inc. and C & G Marine Service, Inc.

James R. Sutterfield, Bonnie M. Steiner, Nathan L. Schrantz, Hoffman, Sutterfield, Esenat & Bankston, New Orleans, LA, for third-party defendants, Chancellor Ins. Co., Ltd., Yorkshire Ins. Co., Ltd., Cornhill Ins. PLC, Allianz Intern. Ins. Co., Ltd., and Ocean Marine Ins. Co., Ltd.

Edward F. LeBreton, III, Cindy T. Matherne, Rice, Fowler, Kingsmill, Vance, Flint & Booth, New Orleans, LA, for third-party defendant and third-party plaintiff, Albany Ins. Co.

Kevin J. Koenig, Raggio, Cappel, Chozen & Berniard, Lake Charles, LA, for intervenor Aetna Cas. and Sur. Co.

Carl James Hebert, Michael W. Mallory, Evans & Co., New Orleans, LA, for defendant, intervenor-defendant, cross-claimant and third-party plaintiff, Forest Oil Corp. in its capacity as time charterer.

James A. Cobb, Jr., John F. Emmett, Emmett, Cobb, Waits & Kessenich, New Or-

**1562**

leans, LA, for cross-defendants, intervenor-defendants, and third-party plaintiffs, A & A Boats, Inc. and C & G Marine Service, Inc.

Paul B. David, Richard J. Guidry, Broussard, David & Daigle, Lafayette, LA for cross-defendant and third-party defendant Operators and Consulting Services, Inc.

Muriel O. Van Horn, Lenfant & Associates, New Orleans, LA, for third-party defendant, Aetna Cas. & Sur. Co.

## RULING ON MOTION FOR RECONSIDERATION

PUTNAM, Senior District Judge.

### Background

This matter is before the Court on a motion for reconsideration by cross-defendant and third-party defendant, Operators and Consulting Services, Inc. ("OCS") and its comprehensive general liability ("CGL") underwriters, Chancellor Insurance Co., Ltd., Yorkshire Insurance Company, Ltd., Cornhill Insurance PLC, Allianz International Insurance Co., Ltd., and Ocean Marine Insurance Company, Ltd., hereinafter ("Underwriters").

This case arises out of injuries suffered by plaintiff, Jerry B. Hodgen, after making a swing rope transfer from a fixed platform onto a vessel in the Gulf of Mexico off the coast of Louisiana. In written reasons dated April 26, 1994, we found that defendants, Forest Oil Corporation, in its capacity as time charterer of the M/V "Ms. Deborah" (hereinafter "Forest"), and A & A Boats, Inc. and C & G Marine Service, Inc. ("A & A/C & G"), were both negligent in causing plaintiff's injuries based on general maritime tort principals embodied in 33 U.S.C. § 905(b). We apportioned their fault at 85% for Forest and 15% for A & A/C & G.

Prior to trial, we bifurcated plaintiff's claims against A & A/C & G and Forest, in both its capacities as time charterer and platform owner, from all of the issues in the case. One of these issues is the indemnity claim by Forest and A & A/C & G against OCS and its underwriters. This opinion will address that claim.

### Facts

Plaintiff was employed by OCS, and worked on several fixed platforms owned by Forest on the Outer Continental Shelf. Forest time-chartered the M/V "Ms. Deborah" from A & A/C & G. At the close of the evidence at the trial on plaintiff's tort claims against Forest and A & A/C & G, the Court ruled in Open Court that plaintiff was a borrowed employee of Forest.

In our Memorandum Ruling of April 26, 1994, plaintiff's work situation was described as follows:

Plaintiff was employed as a platform operator for OCS on the date of his accident. His duties entailed taking readings from gas charts and meters as well as doing general maintenance on the fixed platforms in the Vermilion Block 255 field. The living quarters for all personnel were on the Vermilion 255–B platform; however, as part of his duties, plaintiff was required to obtain readings on several unmanned platforms in the field, including Vermilion 255–A. He was transported to and from each satellite platform by vessel, or by helicopter if the weather conditions were too rough to make a vessel transfer.

On the morning of the accident, plaintiff and a fellow employee, Randy Ardoin, were lowered by personnel basket from the 255–B platform onto the M/V "Ms. Deborah", owned by A & A/C & G and time-chartered by Forest. They were ferried to the 255–A platform, swung onto the platform by means of a swing rope transfer and took their readings. Plaintiff was allegedly injured while swinging onto the vessel from the 255–A platform when the vessel came up faster than he anticipated, knocking him down violently on all fours on the aft-deck of the vessel.

Under the contract entered into between Forest and OCS, OCS was not required to furnish a vessel to perform its work and it never did provide a vessel in connection with this work for Forest. The services provided by OCS to Forest were exclusively on Forest's fixed platforms, and the only contract in effect between Forest and OCS at the time of plaintiff's accident was a master service contract.

The contract clearly states that OCS will indemnify, defend and save harmless Forest from any and all claims brought against it which arise out of the performance of the contract. A & A/C & G claims that it too is entitled to indemnity because in OCS's contract with Forest, OCS agreed to indemnify, defend and save harmless the "Forest Group". The "Forest Group" is defined in the contract to include Forest, its subsidiary, affiliated and related companies, and its and their working interest owners, co-lessees, co-owners, contractors and subcontractors. A & A/C & G thus contends that as the owner/operator of the vessel chartered to Forest, it is a member of the "Forest Group" entitled to indemnity.

In addition, paragraph 13.1 of the contract provides the following choice of law provision:

> This contract shall be governed by the general maritime law of the United States. If general maritime law is held inapplicable, this contract shall be governed by the laws of the State of Colorado.

### Law and Analysis

OCS argues that the contentions of Forest and A & A/C & G (hereinafter collectively "Forest Group") are without merit because this contract is governed by the Louisiana Oilfield Indemnity Act ("Anti–Indemnity Act"), LSA–R.S. 9:2780, by virtue of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, et seq.

The Anti–Indemnity Act voids oilfield agreements to the extent the agreements contain provisions for indemnification for losses caused by the negligence or fault of the indemnitee. The Forest Group contends that this case does not arise under the OCS-LA and that general maritime law governs the validity of the indemnity provision.

Accordingly, we must engage in a two-step inquiry:

(1) Whether Forest/OCS contract is maritime or non-maritime; and

(2) If the contract is non-maritime, whether the Anti–Indemnity Act applies by virtue of the OCSLA.

### Is the Contract Maritime or Non–Maritime [1]

■ In determining whether a contract may be characterized as "maritime" or "non-maritime", we must look to the nature and character of the contract, rather than its place of execution or performance.[2]

The determination of the nature of the contract depends in part on historical treatment in the jurisprudence and in part on a fact specific inquiry.[3]

With respect to the historical jurisprudential treatment afforded fixed platform workers, the Supreme Court has held that work on a fixed platform is not inherently maritime employment.[4]

In addition to looking at the historical treatment given a contract, the *Davis & Sons* court also adopted a six-part fact specific inquiry that courts must use in characterizing a contract. These factors are as follows:

(1) What does the specific work order in effect at the time of the injury provide?

---

**1.** The Court originally granted summary judgment to OCS and its underwriters on the validity of the indemnity provision in the Forest/OCS Contract. In that opinion, we held that the contract was non-maritime and that the Anti–Indemnity Act applied by virtue of the OCSLA.

We subsequently granted a motion by the Forest Group to reconsider that opinion for reasons wholly unrelated to whether the contract was maritime or non-maritime. Accordingly, this part of the original opinion is repeated *in toto*.

**2.** *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 316 (5th Cir.1990), citing *North Pacific SS Co. v. Hall Bros. Marine RI and Shipbuilding Co.*, 249 U.S. 119, 125, 39 S.Ct. 221, 223, 63 L.Ed.

510 (1919); *Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961).

**3.** Ibid.

**4.** *Herb's Welding v. Gray*, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985); *Houston Oil and Minerals v. American International Tool Co.*, 827 F.2d 1049, 1053 (Ftn. 3) (5th Cir.1987).

*Cf. Hollier v. Union Texas Petroleum Corp.*, 972 F.2d 662 (5th Cir.1992) (contract for well testing services held to be non-maritime); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1986 AMC 237 (5th Cir.1985) (Contract to construct fixed offshore production platform held to be non-maritime).

(2) What work did the crew assigned under the work order actually do?

(3) Was the crew assigned to work aboard a vessel in navigable waters?

(4) To what extent did the work being done relate to the mission of that vessel?

(5) What was the principal work of the injured worker?; and

(6) What work was the injured worker actually doing at the time of the injury?[5]

We will now apply the *Davis & Sons* factors to the case before us.

*No. 1—The Specific Work Order*

There was no specific work order in effect on the day of plaintiff's injury; however, all work performed for Forest by OCS's personnel was related exclusively to Forest's fixed platforms.

*No. 2—The Actual Work Performed*

See above.

*No. 3—Aboard a Vessel*

Again, all work performed by OCS personnel was related to Forest's fixed platforms. Admittedly, plaintiff and his fellow employees had to be ferried from platform to platform in order to perform their work on the satellite platforms. However, OCS was not required to provide a vessel to perform its work for Forest. The use of the vessel was merely incidental to the work that was done on the fixed platforms.[6]

*No. 4—Relationship of the Work to the Mission of the Vessel*

The platform-related work performed by OCS personnel was merely incidental to the mission of the vessel. The vessel was necessary to transport plaintiff and co-employees between platforms. However, the principal obligation did not concern the operation of the vessel.[7]

*Nos. 5 & 6—Work of the Injured Employee*

As noted previously, plaintiff's work was the operation and maintenance of Forest's fixed platforms. This is precisely the type of work in which he was engaged at the time of his injury. Additionally, plaintiff testified at trial that he never did any of his actual work on vessels.

Under the *Davis & Sons* factors outlined above, the Court finds that the contract between Forest and OCS was clearly non-maritime. Accordingly, we must now determine whether the Anti–Indemnity Act applies by virtue of the OCSLA.

*Application of OCSLA*

The OCSLA provides, in relevant part, as follows:

To the extent that they are applicable and not inconsistent with this Act or with any other federal laws and regulations of the secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent state now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the state if its boundaries were extended seaward to the outer margin of the Outer Continental Shelf. . . .

43 U.S.C. § 1333(a)(2)(A). Subsection (a)(1) explicitly places "artificial islands, and all installations and other devices permanently and temporarily attached to the seabed" under OCSLA's coverage. Ibid. § 1333(a)(1).

The Court has articulated the following test to determine whether to apply adjacent state law as surrogate federal law under the OCSLA:

1. The controversy must arise on a situs covered by the OCSLA (i.e. the subsoil,

---

**5.** *Davis & Sons* (supra) 919 F.2d at 316; *See also Domingue v. Ocean Drilling & Exploration Co., et al,* 923 F.2d 393 (5th Cir.1991) *Cert. den.* — U.S. ——, 112 S.Ct. 874, 116 L.Ed.2d 779 (1992).

**6.** In *Hollier* (supra, Ftnt. 4), the court declined to find that the act of stepping from a crewboat to a fixed platform constitutes a separable maritime obligation in a contract to perform services on

that platform. *Hollier,* 972 F.2d at 665. The court sees no rationale for an opposite finding when one steps from the platform to the boat.

**7.** Contrast *Davis & Sons* (supra, Ftnt. 2), where the vessel served as a platform upon which the crew performed its work.

seabed or artificial structures permanently or temporarily attached thereto);

2. Federal maritime law must not apply of its own force; and

3. The state law must not be inconsistent with federal law.

*Smith v. Penrod Drilling Corp.,* 960 F.2d 456, 459 (5th Cir.1992) (quoting *Union Texas Petroleum Corp. v. PLT Engineering,* 895 F.2d 1043, 1047 (5th Cir.1990) *cert. den.* 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990).)

In our original opinion on this question, we held that all three of the above factors were satisfied (only the first two were in dispute), and that the Anti–Indemnity Act was thus applicable to the Forest/OCS contract. Again, our discussion will address only the first two factors because these are the only ones in dispute.

*Situs*

■ The Forest Group argues that the interpretation of the indemnity provision in the Forest/OCS contract is not governed by the Anti–Indemnity Act because plaintiff's accident did not happen on an OCSLA "situs". We expressly found in our memorandum ruling of April 26, 1994 that plaintiff was injured while on the vessel, and thus held that plaintiff's tort claims against the Forest Group were governed by general maritime law under 33 U.S.C. § 905(b). Accordingly, the Forest Group argues that since plaintiff was not injured while on a "fixed structure" on the OCSLA, there is no OCSLA situs to make the Anti–Indemnity Act apply.

A discussion of whether the situs requirement is met must necessarily begin with *Union Texas Petroleum v. PLT Engineering* (supra). That case involved an offshore construction contract between Union Texas Petroleum (UTP) and PLT Engineering, Inc. (PLT), wherein PLT agreed to design, fabricate, and install a gas transportation system from a fixed platform to a side tap in a pipeline. The fixed platform and the pipeline at the point of the side tap were located on the Outer Continental Shelf, as was the gas transportation system itself.

PLT entered into contracts with various subcontractors to complete the job. Most of the work done under these subcontracts took place on the ocean floor or on a riser on UTP's fixed platform. Some vessels were used for transportation of men and facilities and others afforded living facilities.

After learning that PLT had not paid its subcontractors, UTP filed an interpleader action to determine how the money should be allocated among PLT and its subcontractors. Each of the subcontractors asserted liens under the Louisiana Oilwell Lien Act (LOW-LA), LSA–R.S. 9:4861 et seq. At issue before the Court was whether LOWLA was applicable to the contractual dispute between the parties.

The Court initially formulated the above three-part test in determining whether the OCSLA was applicable. It then addressed PLT's argument that the controversy did not arise on an OCSLA situs because the subcontractor's contracts called for services which were provided from vessels and by divers in the ocean instead of on a platform. The Court stated as follows:

> ... [t]he gathering line exactly fits the statutory definition of an "other device [ ] permanently attached or temporarily attached to the seabed ... erected thereon for the purposes of ... developing, or producing resources therefrom." 43 U.S.C. § 1333(a)(1). In addition, the gathering line was buried beneath the ocean floor. It was connected to a platform at one end. It was connected to a transmission line at the other. *The locations where the substantial work was done were covered situses—the subsoil or seabed; an artificial island; and an installation for the production of resources.* Thus the first condition is met. *Union Texas Petroleum,* 895 F.2d at 1047–48. (Emphasis added and footnotes omitted.)

Unlike the *Union Texas Petroleum* case, which did not involve personal injury to a plaintiff, the Court in *Domingue v. Ocean Drilling and Exploration Co.,* (supra, Ftnt. 5) addressed the validity of an indemnity provision in a contract between a wireline operator and the owner of a jackup drilling rig. The plaintiff was performing well-testing work unrelated to the wireline operation

when he tripped and fell over a piece of equipment that had been placed on the deck of the rig by the wireline crew. He filed suit against the wireline operator and the rig owner. The rig owner then filed a cross-claim against the wireline operator seeking contractual indemnity. The wireline operator asserted that the Anti–Indemnity Act invalidated the indemnity provision.

The *Domingue* court first applied the six-factor test outlined in *Davis & Sons* (supra, Ftnt. 2) and found that the contract was non-maritime. The Court then held that the Anti–Indemnity Act was applicable, without giving reasons therefor.

The significance of this case is that it provides support for the proposition that the Anti–Indemnity Act can still apply to instances where the plaintiff is injured on a vessel.[8]

*Hollier v. Union Texas Petroleum Corp.* (supra, Ftnt. 4) involved a factual scenario very similar to the case *sub judice.* In that case a platform worker was killed while transferring from a vessel to a fixed platform. Once again, the Court was called upon to decide the validity of an indemnity provision in a contract between the platform owner and the decedent's employer.

Prior to finding that the contract was non-maritime pursuant to the factors set out in *Davis & Sons* (supra, Ftnt. 2), the Court determined that the OCSLA was applicable. In holding that there was an OCSLA situs, the Court found that the requirement was met because plaintiff was "in physical contact with the platform at the time of his injury". *Hollier,* 972 F.2d at 665.

The Forest Group argues that the above quoted language establishes that OCSLA situs was not present in this case because plaintiff was clearly not in physical contact with the platform at the time of his injury. We find that the language from *Hollier* is at best unnecessary dicta, and at worst, an improper understanding of the meaning behind the *Union Texas Petroleum* case.

The *Union Texas Petroleum* court stressed that the OCSLA situs requirement is met when the location where a substantial amount of work under the contract is done on covered situses. *Union Texas Petroleum* (supra) 895 F.2d at 1047–48. Since most, if not all, of plaintiff's work under the contract was performed on Forest's fixed platforms, we find that there is OCSLA situs.

*Does Maritime Law apply of its Own Force?*

While admittedly, the *Union Texas Petroleum* case did not involve a personal injury action in which general maritime law was applicable, we see no compelling reason why maritime law should apply to the indemnity provision in the Forest/OCS contract.

Perhaps the easiest way to analyze this is if one separated the "controversy" involving the plaintiff and the tortfeasors (i.e. The Forest Group), from the "contractual controversy" between the Forest Group and OCS and its underwriters. While the events giving rise to the controversy between plaintiff and the Forest Group clearly arose on a vessel in navigation, necessitating the application of general maritime law to his tort claim, the controversy between the Forest Group and OCS and its underwriters involves a determination of the rights and obligations under a non-maritime contract to provide services on a fixed platform. We find no basis to apply maritime law here.

Additionally, the application of maritime law to the contractual dispute would lead to the anomalous result that maritime law would apply to the contractual controversy when employees working pursuant to a non-maritime contract are injured on the high seas, while state law would apply to the contractual controversy if that same employee was injured on the fixed platform. We find that such a result would lead to needless confusion and unpredictability when parties negotiate such contracts. Accordingly, we find that maritime law does not apply of its own force to this contract.

Since all three of the requirements for OCSLA applicability have been met, the Louisiana Anti–Indemnity Act is applicable. Although the Forest/OCS contract contained a choice of law provision wherein Colorado law would apply if the contract was found to be

---

**8.** A jackup drilling rig is a "vessel" at least for the purposes of determining seamen's remedies.

*Offshore Oil Co. v. Robison,* 266 F.2d 769 (5th Cir.1959).

non-maritime, the Outer Continental Shelf Lands Act, supra, mandates that Louisiana law is applicable.

*Effect of Louisiana Anti–Indemnity Act*

■ In *Meloy v. Conoco,* 504 So.2d 833 (La.1987), the Louisiana Supreme Court held that the Anti–Indemnity Act is a complete prohibition to any demand for indemnification arising out of negligence and/or strict liability of the contractual indemnitee (The Forest Group).

■ The Forest/OCS contract also contained a provision requiring OCS to name The Forest Group as additional assureds under various marine insurance coverages, including the Longshore and Harbor Workers Compensation Act, maritime employers liability, *in rem* claims against vessels, and comprehensive general (CGL) coverage for maritime liabilities arising in connection with vessels furnished by the Forest Group. The contract also provided that this coverage would be primary insurance and exclusive of any other existing valid and collectible insurance.

The above provision is void and unenforceable under the Anti–Indemnity Act, unless the indemnitee (Forest Group) paid its share of the premiums for such insurance. *Marcel v. Placid Oil,* 11 F.3d 563, 569–70 (5th Cir. 1994). The parties have produced no evidence that The Forest Group did or did not pay its share of the premiums for the insurance that OCS obtained on its behalf. Accordingly, a ruling on this issue would be premature at this time.

A & A/C & G also makes the argument that, as a third-party beneficiary to the Forest/OCS contract, it somehow has greater rights in the contract than its promisee Forest. Such an argument is without merit and would only serve to contravene the policies behind the Anti–Indemnity Act.

In light of the foregoing, the Court grants the motion for reconsideration by OCS and its underwriters, insofar as the Forest Group seeks contractual indemnification. Accordingly, the cross-claim and third-party demand by the Forest Group against OCS and its underwriters for indemnity are hereby dismissed. A ruling on whether The Forest Group is entitled to coverage as additional assureds under OCS' CGL policy is premature at this time.

The attorneys for OCS and its underwriters shall prepare and file a formal decree in accordance herewith and approved as to form within ten (10) days of this date. Judgment will not be entered until such decree is signed by the Court and filed.