**Jerry B. HODGEN and Bobbie Sue Hodgen**

v.

**FOREST OIL CORPORATION, Ronald J. Doucet, A & A Boats, Inc. and C & G Marine Service, Inc., et al.**

Civ. A. No. 93–0322.

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

Sept. 15, 1994.

See also 862 F.Supp. 1560.

Jerry G. Jones, Jones & Alexander, Cameron, LA, for plaintiff and intervenor-defendant Jerry B. Hodgen.

Donald Coleman Brown, Todd M. Ammons, Woodley, Williams, Fenet, Palmer, Boudreau & Norman, Lake Charles, LA, for defendants, cross-claimants, third party plaintiffs and intervenors-defendants Forest Oil Corp., in its capacity as platform owner, and Ronald J. Doucet.

D. Kirk Boswell, Stephen E. Mattesky, Terriberry, Carroll & Yancey, New Orleans, LA, for third-party defendant Commercial Union Ins. Co. and defendants, cross-defendants, intervenor-defendants and third-party plaintiffs A & A Boats, Inc. and C & G Marine Service, Inc.

James R. Sutterfield, Bonnie M. Steiner, Nathan L. Schrantz, Hoffman, Sutterfield, Esenat & Bankston, New Orleans, LA, for third-party defendants Chancellor Ins. Co., Ltd., Yorkshire Ins. Co., Ltd., Cornhill Ins. PLC, Allianz Intern. Ins. Co., Ltd., and Ocean Marine Ins. Co., Ltd.

Edward F. LeBreton, III, Cindy T. Matherne, Rice, Fowler, Kingsmill, Vance, Flint & Booth, New Orleans, LA, for third-party defendant and third-party plaintiff Albany Ins. Co.

Kevin J. Koenig, Raggio, Cappel, Chozen & Berniard, Lake Charles, LA, for intervenor Aetna Cas. and Sur. Co.

Carl James Hebert, Michael W. Mallory, Evans & Co., New Orleans, LA, for defendant, intervenor-defendant, cross-claimant and third-party plaintiff Forest Oil Corp. in its capacity as time-charterer.

James A. Cobb, Jr., John F. Emmett, Emmett, Cobb, Waits & Kessenich, for cross-defendants, intervenor-defendants, and third-party plaintiffs A & A Boats, Inc. and C & G Marine Service, Inc.

Paul B. David, Richard J. Guidry, Broussard, David & Daigle, Lafayette, LA, for cross-defendant and third-party defendant Operators and Consulting Services, Inc.

Muriel O. Van Horn, Lenfant & Associates, New Orleans, LA, for third-party defendant Aetna Cas. & Sur. Co.

## MEMORANDUM RULING

PUTNAM, Senior District Judge.

This matter arises out of injuries sustained by plaintiff, Jerry B. Hodgen, on May 5, 1991 while making a swing rope transfer from a fixed platform onto a vessel in the Gulf of Mexico. In written reasons dated April 26, 1994, and amended April 28, 1994, we found that defendants—Forest Oil Corporation, in its capacity as time charterer of the M/V "Miss Deborah" (hereinafter "Forest"), and A & A Boats, Inc. and C & G Marine Service, Inc. (hereinafter "A & A/C & G")—were both negligent in causing plaintiff's injuries based on general maritime court principles embodied in 33 U.S.C. § 905(b). We awarded damages in the amount of $2,402,990.19 and apportioned defendants' fault at 85% for Forest and 15% for A & A/C & G. We also found that Forest was not at fault in its capacity as platform owner, and that plaintiff was Forest's borrowed employee at the time of the accident.[1]

Subsequent to that ruling, on May 27, 1994, 862 F.Supp. 1560 the Court issued a ruling on motion for reconsideration, whereby we dismissed Forest's and A & A/C & G's claims for contractual indemnity against plaintiff's employer, Operators and Consulting Services, Inc. (hereinafter "OCS") pursuant to the Louisiana Oilfield Indemnity Act ("Anti–Indemnity Act"), LSA–R.S. 9:2780.[2] In that ruling, we left open the question of whether Forest and A & A/C & G were entitled to coverage as additional assureds under OCS's insurance policies.

In an order dated June 10, 1994, the Court directed the parties to submit memoranda, documents and deposition transcripts with respect to all remaining claims in the case. Those claims are as follows:

1. Cross-claim by Forest against OCS for defense costs;

2. Forest and A & A/C & G's third-party complaint against OCS's underwriters for status as additional assureds;

3. Third-party complaint by Albany Insurance Company against Aetna Casualty and Surety Company for declaration that coverage provided by Aetna's policy primes that of Albany's;

4. Intervention by Aetna Casualty and Surety Company to recover medical expenses and wage replacement benefits that it has paid to plaintiff;

5. Claims by Forest and A & A/C & G that they are entitled to limitation of liability;

6. Third-party complaint by Forest against Albany Insurance Company and Commercial Union Insurance Company for coverage against plaintiff's claims; and

7. Cross-claim by Forest against A & A/C & G for breach of contract.

With that background, this ruling will address those remaining issues.

### Cross-claim by Forest against OCS for Defense Costs

■ The Forest/OCS contract provides that OCS will indemnify, defend, and save harmless Forest from any and all claims brought against it which arise out of the performance of the contract. Although we have already dismissed its claims for indemnity, Forest now makes a claim for defense costs under *Meloy v. Conoco,* 504 So.2d 833 (La.1987).

In *Meloy,* the La. Supreme Court held that the Anti–Indemnity Act is a complete prohibition to any demand for indemnification arising out of negligence and/or strict liability of a contractual indemnitee (Forest). However, the *Meloy* Court also noted that the Act prohibits indemnity for costs of defense only where there is "negligence or fault

---

1. This finding did not affect Forest's liability in its capacity as time charterer.

2. Forest has filed a motion for reconsideration of this ruling, which motion is hereby denied.

(strict liability) on the part of the indemnitee", and that the Act is not applicable where there has been a judicial finding that the indemnitee is free from fault.[3]

Forest argues that in light of the Court's finding that it was not at fault in its capacity as platform owner, it can now assert a *Meloy* claim for defense costs. Although we found Forest at fault in its capacity as time charterer of the vessel, Forest argues that it can maintain a *Meloy* claim by virtue of its lack of fault in its capacity as platform owner.

We find Forest's argument to be unpersuasive. The Anti–Indemnity Act does not make an exception if an indemnitee is found to be at fault in one capacity, and free of fault in another capacity. Regardless of whether Forest can be at fault in two different capacities for the purposes of plaintiff's tort claim against it, the fact remains that Forest is one entity, and the Court has made a judicial determination that this one entity was at fault in causing plaintiff's injuries. Accordingly, Forest's *Meloy* claim for defense costs is denied.

### *Forest and A & A/C & G's Cross–Claim Against OCS's Underwriters for Status as Additional Assureds*

■ The Forest/OCS contract also contained a provision requiring OCS to name the Forest Group (Forest and A & A/C & G) as additional assureds under various marine insurance coverages, including the Longshore and Harbor Workers' Compensation Act, Maritime Employers Liability, in rem claims against vessels, and comprehensive general (CGL) coverage for maritime liabilities arising in connection with vessels furnished by the Forest Group. The contract also provided that this coverage would be primary insurance and exclusive of any other valid and collectible insurance.

In our previous ruling, in which we found that the Anti–Indemnity Act was applicable to the Forest/OCS contract, we held that the above provision was void and unenforceable

under the Act unless the indemnitee (Forest Group) paid its share of the premiums for such insurance.[4] Noting that neither the Forest Group nor OCS and its underwriters had produced any evidence to support or refute this, we left the record open to allow the parties to conduct discovery to determine whether the Forest Group did in fact pay its share of premiums to be named as additional assureds.

A review of the evidence submitted on this point establishes that the Forest Group can produce no evidence that it paid any material portion of OCS's insurance premiums or reimbursed it therefor.[5] On the other hand, OCS and its underwriters have submitted cancelled checks for the premiums that it paid for such insurance, as well as the affidavit of Charles Dupuis, head of administrative services for OCS, who confirms that OCS paid 100% of the costs of such insurance, which was never reimbursed by the Forest Group.[6]

A & A/C & G makes much of the fact that OCS paid a premium for a blanket additional assured endorsement which did not change from year-to-year depending on for whom OCS worked. Since there was no premium that could be traced to the Forest Group in particular, A & A/C & G argues that there was no shifting of the economic burden of insurance coverage or liability insurance to OCS, and therefore the Anti–Indemnity Act is not implicated. This argument is without merit. Our sole inquiry is whether any material part of the cost of insuring the Forest Group was borne by OCS, which in fact is the case since OCS alone paid the insurance premiums.

In addition, Forest cites the deposition testimony of Ken Smith, a former Forest attorney, who testified that Forest had a "working policy" whereby contractors like OCS understood that they could factor in the cost of procuring such insurance when they submitted bids to work for Forest. However, Mr. Smith also conceded that a contractor could lose its contract if this factoring result-

---

**3.** *Meloy*, 504 So.2d at 839.

**4.** *Marcel v. Placid Oil*, 11 F.3d 563, 569–70 (5th Cir.1994).

**5.** See OCS and Underwriters Exhibits 4 & 5.

**6.** See OCS and Underwriters Exhibits 1 & 2.

ed in a bid that was higher than competitors.[7]

At any rate, we find that this so-called policy of Forest does not amount to a shift in the economic burden of carrying such insurance as was contemplated by the *Marcel* exception.

The Court in *Marcel* expressly adopted the exception to the Anti–Indemnity Act formulated by the Court in *Patterson v. Conoco,* 670 F.Supp. 182 (W.D.La.1987). The *Marcel* court characterized the contract in *Patterson* as follows:

> Under the agreement at issue in *Patterson,* the employer of the injured plaintiff was required to provide insurance coverage indemnifying a third party, . . . . [t]he agreement provided, however, that the indemnitee would reimburse the employer for the insurance premiums. The indemnitee produced evidence documenting its payment of these premiums over a period of approximately 18 months. Based upon this reimbursement, the Court concluded that the agreement was not void because the indemnitee had paid for its own insurance. *Marcel,* 11 F.3d at 569.

Unlike the contract in *Patterson,* the Forest/OCS contract required OCS to *alone* bear the cost of paying such insurance premium. Accordingly, Forest's argument is without merit. In light of the foregoing, the cross-claims by Forest and A & A/C & G for additional assured status under OCS's CGL policy are dismissed.

### Third–Party Complaint by Albany Insurance Co. Against Aetna

■ Albany Insurance Company is the excess Protection and Indemnity (P & I) insurer of A & A/C & G. It filed a third-party complaint against OCS's workers compensation and employers liability carrier, Aetna Casualty Company (hereinafter "Aetna"), alleging that because plaintiff was Forest's

borrowed employee on the date of the accident, Forest is covered under OCS's policy, and such insurance primes Albany's excess policy pursuant to the terms of the Forest/OCS contract.

A review of the Aetna policy indicates that Forest was not named as an additional assured under the Aetna policy. Therefore, Forest is not covered under the policy. However, assuming *arguendo* that Forest in fact was an additional assured under the Aetna policy, this would be unenforceable under the Anti–Indemnity Act because OCS was required in the contract to procure and maintain this insurance at its sole expense. See *supra.*[8]

### Aetna's Intervention to Recover Medical Expenses and Wage Replacement Benefits

Aetna provided statutory worker's compensation insurance coverage to Mr. Hodgen's employer, OCS. Pursuant to that policy, Aetna paid to, or on behalf of plaintiff, $219,712.11 as of July 29, 1994. Of this amount, $158,369.71 was paid for medical expenses incurred, and $61,342.40 for wage replacement indemnity benefits. Aetna contends that by virtue of its policy, it has subrogation rights to recover from Forest and A & A/C & G those medical expenses and benefits that it has paid.

Plaintiff argues that Aetna has waived its subrogation rights in the policy, and that he is thus entitled to retain in full his award for past lost wages and past medical expenses. Accordingly, we must first determine whether Aetna waived its subrogation rights, and, if so, what are the consequences.

### Did Aetna Waive its Subrogation Rights?

■ Aetna initially provided workers compensation coverage to OCS for the policy year beginning March 17, 1989.[9] It was sent to OCS by OCS's broker, Frank B. Hall, on July 6, 1989. That policy, numbered 94 C

---

7. See OCS Exhibit A, Deposition of Ken Smith, p. 57.

8. Forest has filed a motion for leave to file a third-party complaint against OCS, its CGL Underwriters and Aetna. This pleading makes allegations similar to those made by Albany. For

the reasons outlined above, the allegations made in Forest's cross-claim are without merit, and leave to file the cross-claim is hereby denied.

9. See Exhibits 1 & 2 to Deposition of Charles Dupuis.

463092 CAA, initially did not contain a waiver of subrogation endorsement. In a letter dated July 6, 1989 from Bonnie Rogers, an account executive for Frank B. Hall, to T.J. Johnson, OCS's president, she stated that she was "waiting on approval of 'blanket waivor (sic) of subrogation' in order to comply with many of your [OCS's] contracts."[10]

In October of 1989, a waiver of subrogation endorsement (WC 00 03 13) was added to the policy, and made effective retroactively to July 5, 1989.[11] OCS was charged an additional premium of $862.00 for the above waiver of subrogation.

On May 23, 1990, Ms. Rogers sent a copy of the Aetna policy for policy year beginning March 17, 1990 to Charlie Dupuis, manager of administrative services for OCS. This policy had a different policy number than the previous policy, and therefore was not a renewal policy. In her letter of transmittal, Ms. Rogers stated as follows, to wit:

"... There are several endorsements pending which I have requested from Aetna. They are as follows:

... (3) blanket waivor [sic] of subrogation pr [sic] expiring policy...."[12]

A review of this policy shows there was no waiver of subrogation endorsement.[13] However, on July 31, 1990, Clint Rogers, a senior vice-president with Frank B. Hall, sent a certificate of insurance to Forest Oil. In that document, Mr. Rogers certified that the Aetna policy "waived subrogation against Forest Group and its insurers...."[14]

On February 26, 1991, OCS received a notice from Aetna that its policy, numbered 94 C611484 CAA, would expire on March 17, 1991. The notice advised OCS that if it wished to renew its policy, the estimated premium would be $220,150.00, with a deposit of $55,040 and eleven payments of $15,010.[15] Attached to this notice was a breakdown of the estimated annual premium. This breakdown did not mention any premium charge for a waiver of subrogation. Mr. Dupuis testified that he noticed that the breakdown did not contain a charge for waiver of subrogation, but felt that there was no need to request that Aetna endorse the policy to include a waiver because it followed from the first year [March 17, 1989 through March 17, 1990].[16] However, Mr. Dupuis also admitted that a waiver of subrogation endorsement was not put into the policy in previous years when it was not included in the "breakdown of quote".[17] He did not know if his agent at Dwight Andrus, James Sonnier, made such a request.[18]

On March 8, 1991, Dwight Andrus Insurance Agency faxed Mr. Dupuis a certificate of insurance dated March 8, 1991, which indicated that OCS's workers compensation policy for the policy year beginning March 17, 1991 contained a blanket waiver of subrogation. On March 11, 1991, Mr. Sonnier faxed a letter to Mark Ripple at Aetna. There is a hand-written message in that letter stating as follows:

"Per our conversation of this p.m., please issue renewal *as proposed in your correspondence of 2/91.* Please advise new policy no. Regards, Jim Sonnier." (Emphasis added).[19]

A review of the Aetna policy for the policy year beginning March 17, 1991 indicates no blanket waiver of subrogation was included.[20]

---

10. See Exhibit 5 to Deposition of Charles Dupuis.

11. See Exhibit 7 to Deposition of Charles Dupuis.

12. See Exhibit 2 to Deposition of Charles Dupuis.

13. See Exhibit 2 to Deposition of Charles Dupuis.

14. See Exhibit 2 to Deposition of Charles Dupuis.

15. See Exhibit 9 to Deposition of Charles Dupuis.

16. See Deposition of Charles Dupuis, p. 26.

17. Ibid, pp. 26–27.

18. Id. p. 28.

19. See Exhibit 1 to Deposition of James Sonnier, p. 27.

20. See Exhibit 3 to Deposition of Charles Dupuis.

On March 28, 1991, Mr. Dupuis sent Mr. Ripple a check in the amount of $119,718.00. In his letter of transmittal, Mr. Dupuis notes that $55,040.00 of that amount is for the deposit premium covering the renewal of Policy No. 94–C–611484–CAA. He also attached the "breakdown of quote" and transmittal letter that was sent by Mr. Ripple in February of 1991, which did not contain a charge for a waiver of subrogation. In his letter, Mr. Dupuis also says that the remaining $64,678.00 is to settle Aetna's audit of Policy No. 94–C–463092–CAA, for the March 17, 1989 through March 17, 1990 policy.[21]

Plaintiff's accident happened on May 5, 1991. The policy for the March 17, 1991 through March 17, 1992 policy year was issued on June 26, 1991, without a waiver of subrogation endorsement.

Mr. Hodgen argues that Aetna unilaterally deleted the waiver of subrogation clause, even after receiving the March 8, 1991 certificate of insurance from Mr. Sonnier showing there was a waiver of subrogation. However, while the testimony of Mr. Dupuis and Mr. Sonnier establishes that Frank Hall and Dwight Andrus were agents for OCS, it is not at all clear that they also acted on behalf of Aetna. Additionally, although Mr. Sonnier testified that it was standard practice to send certificates of insurance to the insurers, there is no proof that the certificate was sent to Aetna in this instance.[22] Finally, in light of the fact that the March 17, 1990 through March 17, 1991 policy did not contain a waiver of subrogation endorsement, and a charge was not included in the breakdown of the estimated premium therefor,[23] OCS and Dwight Andrus should have been put on notice that the endorsement would not be included in the March 17, 1991 through March 17, 1992 policy unless they requested it.

Mr. Hodgen argues that the premium paid at the beginning of the policy is only a deposit, and that the actual premium is not determined until an audit is done at the end of the

term, when actual payroll is known, and that OCS is still prepared to pay the premium for the waiver. While we do not disagree with this assessment, we find that the fact that an estimated premium for the waiver was not included in the initial "breakdown of quote" should have put OCS on notice that the waiver endorsement would not be included in the policy. Furthermore, after OCS actually received the policy on June 8, 1991, there is no evidence to suggest that it requested the blanket waiver of subrogation endorsement. Mr. Sonnier did however request a specific waiver of subrogation for Stone Petroleum, which waiver became effective on August 26, 1991.

■ In light of the above, we find that there was a unilateral error on the part of OCS and/or Dwight Andrus in failing to obtain the blanket waiver of subrogation for the March 17, 1991 through March 17, 1992 policy. Therefore, that policy may not be reformed. Accordingly, since Aetna did not waive its subrogation rights in the policy, we find that it is entitled to its intervention for the medical expenses and wage replacement indemnity benefits that it has paid on Mr. Hodgen's behalf.

*Claims by A & A/C & G and Forest for Limitation of Liability A & A/C & G*

■ 46 U.S.C. § 183(a) provides that the liability of a shipowner for "any act, matter, or thing, loss, damage, or forfeiture, done, occasioned or incurred *without the privity or knowledge of such owner*, shall not exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." [24] The parties stipulate that A & A owned the vessel and that the value of the vessel and freight on the date of the accident was $490,125.00. Therefore, the question is whether the negligent acts done by Captain Flanders were done without the privity or knowledge of A & A.

---

**21.** See Exhibit 3 to Deposition of Charles Dupuis.

**22.** See Deposition of James Sonnier, pp. 130–131.

**23.** See Exhibit 2 to Deposition of Charles Dupuis.

**24.** 3 *Benedict on Admiralty*, § 41 (7th Ed.1993).

■ The burden of proof as to privity or knowledge is upon the petitioning shipowner. When the shipowner is a corporation, we must look to the privity or knowledge of the managers of a corporate enterprise who are vested with discretion and authority.[25]

Albert Cheramie, the president of A & A Boats, testified that he knew that A & A's boat captains were allowing swing rope transfers onto the vessels in 7 to 9 foot seas [26] when requested by the time charterer, that he had no problem with it, and expected his captains to follow the charterers' orders in such conditions.[27] He also admitted that A & A provided no training to its captains on how to properly accomplish a swing rope transfer operation.[28] Under these circumstances, we find that A & A Boats had privity and knowledge of the unsafe practices which led to plaintiff's accident, and therefore hold that it is not entitled to limitation of liability.

*Forest Oil Corporation*

■ In its amended answer to plaintiff's complaint, Forest Oil sought to limit its liability to the extent that it is held liable for "vessel related negligence". As previously mentioned, we held Forest liable to plaintiff for acts that it committed in its capacity as time-charterer of the vessel. Accordingly, Forest is liable for vessel-related negligence only.[29]

■ In order to benefit from the Limitation of Liability Act, a charterer must be able to prove both that he has an actual charter, oral or written, and that under such charter he is the party who "mans, victuals, and navigates" the vessel.[30]

At trial, the evidence was clear that only employees of A & A/C & G actually navigated the vessel. While Forest had authority to determine where the vessel would go, its employees did not operate the vessel and therefore the charter between Forest and A & A/C & G was clearly a time charter. Accordingly, Forest is not entitled to limitation of liability.[31]

*Third–Party Demands by Forest Against Albany Insurance Company and Commercial Union Insurance Company*

In the charter agreement between Forest Oil and A & A Boats, A & A agreed to procure and maintain insurance in accordance with Forest's minimum insurance requirements. Included in these requirements was A & A's obligation to name Forest as an additional insured on a P & I policy of insurance. The charter contained no provision as to whether this insurance would be primary or secondary to any other applicable insurance.[32] Pursuant to the charter, A & A named Forest as an additional assured on a P & I policy issued by Commercial Union Insurance Co.[33] That policy had limits of $500,000, subject to a $1,000 deductible. A & A also obtained a follow-form [34] P & I policy from Albany providing excess P & I coverage with limits in the amounts of 4.5 million dollars.

Since Forest's liability stems from "vessel-related negligence", Forest filed a third-party complaint against Commercial Union and Albany seeking coverage under the P & I

---

25. *Ibid.*

26. The height of the seas when plaintiff's accident happened.

27. See Deposition of Albert Cheramie, pp. 47, 51.

28. *Ibid,* p. 48.

29. *Helaire v. Mobil Oil Co.,* 709 F.2d 1031 (5th Cir.1983).

30. 3 *Benedict on Admiralty* (supra) at § 44.

31. *Petition of Skibs A/S Jolund,* 250 F.2d 777 (2d Cir.1957).

32. See Albany Exhibit M, Blanket Time Charter and attachments thereto.

33. See Commercial Union Exhibit C.

34. The Albany policy adopted the terms and conditions of the Commercial Union policy in paragraph 2(a). It provides as follows:
   (a) These underwriters agree to indemnify the assured [A & A/C & G and Forest] for all liability, loss, damage or expense insured against under the P & I policies described in the schedule of underlying insurances (hereinafter referred to in the section and in the general conditions as the "primary policies" [Commercial Union] ).... See Albany Exhibit D.

policies for its portion of plaintiff's damages ($2,402,990.19 × 85% fault).

Commercial Union and Albany do not deny that P & I policies provide coverage for "vessel-related negligence" by a time-charterer such as Forest.[35] However, they argue that pursuant to the "other insurance" clause in their policies, Forest's claims are not covered because Forest was also covered by a worker's compensation and employers liability policy issued by Insurance Company of North America (hereinafter "INA"), as well as a charterer's liability policy issued by certain insurance companies subscribing to a package policy evidenced by cover note no. A–0080–H (hereinafter referred to as "Store-brand policy").[36] Accordingly, to determine the import of the "other insurance" clause, we must first determine whether plaintiff's claims are covered by the INA and/or Store-brand policies.

### Coverage under the INA Policy

■ Commercial Union and Albany argue that because plaintiff was Forest's borrowed employee on the date of his accident, the employers liability policy issued by INA covers this claim.

The policy provides coverage for bodily injury arising out of the course of an injured employee's employment by Forest.[37] Since plaintiff was clearly within the course and scope of his employment with Forest at the time of his accident, we find that plaintiff's claim against Forest is covered by the INA policy.

### Coverage under the Store–Brand Policy

Forest admits that the Heath Oil & Gas Ltd. slip commencing July 1, 1990,[38] the Heath Oil and Gas Ltd. slip commencing December 31, 1990,[39] and the Burke–Daniels Co., Inc. cover note commencing December

31, 1990 [40] constitute all documents evidencing the terms and conditions of Forest's charterer's liability insurance and excess liability insurance on the day of plaintiff's accident (the Store-brand policy).[41] Counsel for Forest also admits that the slips state the terms and conditions which apply to 100% of the coverage.[42]

The three documents evidence various types of coverage, including oil, depreciation, deductible, redrilling, penalty premium protection, business interruption, excess liabilities and onshore/offshore transit risks. Section (vii) provides excess liability or umbrella coverage on the London 1971 form in the amount of $50 million dollars. Endorsement No. 8 to Section (vii) provides:

> Effective at the inception and in consideration of the premium charged, it is understood and agreed that notwithstanding of (sic) paragraph 14, UNCOVERED BY UNDERLYING INSURANCE, contained in Section (vii), Endorsement No. 1, this insurance will respond excess of a self insured retention of U.S. $25,000 each and every loss in respect of charterer's legal liability.

Therefore, the charterer's liability policy covers Forest's liabilities in excess of $25,000.00 to $50,000,000.00.

### EFFECT OF COVERAGE UNDER INA POLICIES AND CHARTERER'S LIABILITY POLICY

■ Commercial Union and Albany argue that by virtue of the "other insurance clause" contained in the Commercial Union policy and incorporated into the Albany policy, plaintiff's claims against Forest are not covered under their policies. The Commercial Union policy contains a classic "escape clause". It provides as follows:

---

**35.** *Randall v. Chevron*, 13 F.3d 888 (5th Cir. 1994)

**36.** See Commercial Union Exhibit B.

**37.** See Part 2, Employers Liability Insurance, par. A(1).

**38.** See Albany Exhibit G.

**39.** See Albany Exhibit H.

**40.** See Albany Exhibit I.

**41.** See Albany Exhibit F, Forest's response to Albany's Request for Production.

**42.** See Albany Exhibit K, Letter dated July 14, 1994 from Carl J. Hebert to Edward LeBreton, III.

Provided that where the assured [Forest] is, irrespective of this insurance, covered or protected against any loss or claim which would otherwise have been paid by the underwriters under this policy, *there shall be no contribution or participation by the underwriters on the basis of excess, contributing, deficiency, concurrent, or double insurance or otherwise.* (Emphasis added).

■■■ Since neither Forest's employer's liability nor charterer's liability policies contain a similar escape clause, we find that plaintiff's claims against Forest are not covered by the primary and excess P & I policies issued by Commercial Union and Albany.[43] Accordingly, Forest's third-party complaint against Commercial Union and Albany is dismissed.

### Cross–Claim by Forest Against A & A/C & G

In the schedule of underlying coverages attached to the time-charter agreement between A & A and Forest, A & A agreed to delete the "other than owner" clause from its protection and indemnity policies, but failed to do so. The relevant policy language is as follows:

Subject to all exclusions and other terms of this policy, these underwriters agree to indemnify the assured for any sums which the assured, as owner of the vessel shall have become liable to pay, and shall have paid, in respect of any casualty or occurrence during the currency of the policy but only in consequence of the matters set forth hereunder, *PROVIDED, however, that if the interest of the assured is or includes interests other than the owner of the vessel, the underwriters liability shall not be greater than if the assured was the owner entitled to all defenses and limitations of liability to which a shipowner is entitled: ...* (Emphasis added)

The emphasized language is often referred to as the "other than owner" clause of a marine P & I policy.

■■■ The intent of the "other than owner" clause is to limit the underwriter's liability to an amount no greater than that to which the assured would be entitled to limit liability if that assured were the owner.[44] Therefore, deleting the "other than owner" clause simply waives the insurer's right to limit its liability to that of the shipowner, who possesses the statutory right to limit liability to the value of its vessel and pending freight.[45]

In its cross-claim, Forest contends that it has been damaged by A & A's failure to delete the "other than owner" clause from its P & I policies. However, in light of our previous holdings that neither A & A nor Forest are entitled to limitation, and that Forest is not covered under the policies, Forest's cross-claim is dismissed as moot.

### Conclusion

In light of the foregoing, we dismiss:

(1) Forest's cross-claim against OCS for defense costs;

(2) Forest and A & A/C & G's third-party complaint against OCS's underwriters for status as additional assureds;

(3) Albany's third-party complaint against Aetna for a declaration that the coverage provided by Aetna's policy primes that of Albany's;

---

**43.** A review of the INA and Store-brand policies indicates that the INA policy has a "pro-rata" other insurance clause, and the Store-brand policy has an "excess" other insurance clause. An escape clause renders a policy in which it is contained completely inapplicable if other insurance exists, an excess clause renders a policy excess to other insurance, and a pro-rata clause provides that the two policies contribute to the loss in proportion to their limits of liability. *Offshore Logistics Services v. Mutual Marine Office,* 462 F.Supp. 485, 493 (E.D.La.1978).

Since neither clause is mutually repugnant from the Commercial Union/Albany "escape" clause, we find that the escape clause may be enforced. See *Viger v. Geophysical Services, Inc.,* 338 F.Supp. 808 (W.D.La.1972), aff'd 476 F.2d 1288 (5th Cir.1973); *Lodrigue v. Montegut,* 1978 AMC 2272 (E.D.La.1977).

**44.** See *Randall v. Chevron USA,* 788 F.Supp. 1398, 1402 (E.D.La.1992); citing A. Parks *The Law and Practice of Marine Insurance and Average,* 1024 (1987).

**45.** Ibid.

(4) Forest's and A & A's claim for limitation of liability;

(5) Forest's third-party complaint against Albany Insurance Company and Commercial Union Insurance Company for coverage under those policies; and

(6) Forest's cross-claim against A & A/C & G for breach of contract.

We grant Aetna's petition for intervention to recover medical expenses and wage replacement benefits that it has paid to plaintiff.

Counsel are ordered to submit to the Court within twenty (20) days of this date a judgment, approved as to form, encompassing this ruling, as well as all previous rulings which have been rendered by the Court. A final judgment will not be entered until such judgment is signed.